509 F.2d 508
 166 U.S.App.D.C. 175
 Jerome WALDIE et al., Appellants
v.
James R. SCHLESINGER, Individually and as Secretary of
Defense, et al.
Don EDWARDS et al., Appellants
v.
James R. SCHLESINGER, Individually and as Secretary of Defense, et al.
 Nos. 75--1636, 75--1637.
 United States Court of Appeals,
District of Columbia Circuit.
 Argued Oct. 30, 1974.
Decided Nov. 20, 1974.
Rehearing Denied Jan. 29, 1975.
 
 Thomas S. Martin, Washington, D.C., with whom Virginia M. Dondy, Steven H. Brose, Margaret J. Gates, and Sara Ann Determan, Washington, D.C., were on the brief, for appellants.
 Royce C. Lamberth, Asst. U.S. Atty., with whom Earl J. Silbert, U.S. Atty., and John A. Terry and Arnold T. Aikens, Asst. U.S. Attys., were on the brief, for appellees.
 Before BAZELON, Chief Judge, and WRIGHT and McGOWAN, Circuit Judges.
 J. SKELLY WRIGHT, Circuit Judge:
 These consolidated actions base their challenge to the constitutionality of the 'men only' admission policies of the United States Air Force Academy and the United States Naval Academy (the Academies) on the equal protection guarantees embodied in the due process clause of the Fifth Amendment. See Bolling v. Sharpe, 347 U.S. 497, 74 S.Ct. 693, 98 L.Ed. 884 (1954). Plaintiffs-appellants are four congressmen, all of whom have nominated female applicants to the Academies, and two female nominees. Their complaints, filed September 26, 1973, seek a court order directing the defendant Academies to process the applications of the plaintiff nominees and 'to consider the applications of any and all future women nominees on an equal basis with those of all other nominated applicants.'
 After responding to plaintiffs' interrogatories, defendants moved on April 29, 1974 to dismiss the complaints or, in the alternative, for summary judgment. This latter motion was supported by four affidavits (from the Deputy Secretary of Defense and the superintendents of three service academies), a 1948 colloquy taken from the Congressional Record, and an extract from a 1945 House Committee report on a bill to establish a Women's Naval Academy. Joint Appendix (JA) at 321--322. Apparently in an attempt to secure the plaintiff nominees the possibility of admission to the Academies for the coming academic year, which was to begin in July, plaintiffs offered on May 15, 1974 a cross-motion seeking partial summary judgment on a significantly reduced claim. JA at 388, 442. In their motion based on the limited record then developed, plaintiffs sought only to have the Academies' absolute bar on women declared unconstitutional and the applications of the plaintiff nominees processed. Expressly left open was the question 'whether in future classes there may be reason to reserve a fixed number of positions for male applicants * * *.' JA at 395 n.2, 450 n.2. This limited approach challenged neither the traditional--and statutory, see 10 U.S.C. §§ 6015, 8549 (1970)--exclusion of women from combat nor the propriety of the Academies preparing only men for these roles. In their cross-motion for partial summary judgment, plaintiffs questioned only the 'constitutional validity of training men at the Academy to pursue careers in specialties which are open to women, while at the same time denying women an Academy education.' JA at 393, 448 (emphasis added). The success of this limited challenge would have allowed women equal access to the Academies only to the extent that the Academies trained officers for noncombat roles.
 After a hearing on June 4, 1974, and a further hearing on June 14, 1974 in which plaintiffs sought a temporary restraining order, the District Court on June 19, 1974 granted summary judgment for defendants and denied plaintiffs' motion for partial summary judgment. JA at 28a. After rejecting plaintiffs' motion to maintain their suits as a class action, the court considered at some length the standard to be applied in testing the constitutional validity of the Academies' sexually discriminatory admission policies. Despite widespread judicial uncertainty about the proper test for sex-based equal protection claims, the District Court settled on the least demanding form of judicial scrutiny, namely, the so-called 'rational relationship' test. JA at 16--22. See, e.g., McGowan v. Maryland, 366 U.S. 420, 426, 81 S.Ct. 1101, 6 L.Ed.2d 393 (1961); Flemming v. Nestor, 363 U.S. 603, 611, 80 S.Ct. 1367, 4 L.Ed.2d 1435 (1960). Then, relying on the affidavits presented by defendants, the court found the Academies to have met their minimal burden of rationality. These appeals followed.
 Summary judgment is proper--indeed, it is desirable--when there is 'no genuine issue as to any material fact and * * * the moving party is entitled to a judgment as a matter of law.' Rule 56(c), Fed.R.Civ.P. Cf. Bloomgarden v. Coyer, 156 U.S.App.D.C. 109, 114, 479 F.2d 201, 206 (1973). In this case, however, we find that disputed issues of fact remain. The District Court relied on affidavits asserting the 'conclusory opinions of military officers,' the very persons charged with unconstitutional discrimination. See Anderson v. Laird, 151 U.S.App.D.C. 112, 133, 466 F.2d 283, 304, cert. denied, 409 U.S. 1076, 93 S.Ct. 690, 34 L.Ed.2d 665 (1972) (separate opinion of Leventhal, J.). While that reliance is not per se improper, we think these affidavits are too ambiguous to be accepted as fact, untested by cross-examination.[1]
 Although appellees did not rely on their answers to appellants' interrogatories to support their motion for summary judgment, and the District Judge made no mention of them in his opinion sustaining the motion, we have considered them. We find that these answers are either irrelevant to appellees' motion for summary judgment or suffer from the same infirmities as the affidavits. Moreover, we are not nearly as certain as the District Court that the Supreme Court has settled on the 'rationality' standard for testing sex-based equal protection claims. Rather, we think this area of constitutional law is still evolving and is often highly dependent on the facts of each case. Accordingly, a full development of the facts of these cases is essential to any meaningful assessment of appellants' claim against the rapidly changing, and variously interpreted, case law. See Kahn v. Shevin, 416 U.S. 351, 94 S.Ct. 1734, 40 L.Ed.2d 189 (1974); Cleveland Board of Education v. LaFleur, 414 U.S. 632, 94 S.Ct. 791, 39 L.Ed.2d 52 (1974); Frontiero v. Richardson, 411 U.S. 677, 93 S.Ct. 1764, 36 L.Ed.2d 583 (1973); Reed v. Reed, 404 U.S. 71, 92 S.Ct. 251, 30 L.Ed.2d 225 (1971). See also Brenden v. Independent School District 742, 8 Cir., 477 F.2d 1292 (1973); Eslinger v. Thomas, 4 Cir., 476 F.2d 225 (1973); Gruenwald v. Gardner, 2 Cir., 390 F.2d 591, cert. denied, 393 U.S. 982, 89 S.Ct. 456, 21 L.Ed.2d 445 (1968); Kohr v. Weinberger, E.D.Pa., 378 F.Supp. 1299 (1974); Ballard v. Laird, S.D.Cal., 360 F.Supp. 643 (1973), prob. jur. noted, 415 U.S. 912, 94 S.Ct. 1405, 39 L.Ed.2d 465 (1974); Wiesenfeld v. Secretary of Health, Educ. & Welfare, D.N.J., 367 F.Supp. 981 (1973). See generally Gunther, The Supreme Court 1971 Term--Foreword: In Search of Evolving Doctrine on a Changing Court, 86 Harv.L.Rev. 1 (1972); Getman, The Emerging Constitutional Principle of Sexual Equality, 1972 Supreme Court Review 157; Note, Sex Discrimination and Equal Protection: Do We Need a Constitutional Amendment?, 84 Harv.L.Rev. 1499 (1971).
 The judgment of the District Court is reversed and these cases are remanded for a full trial on the merits.[2]
 Reversed and remanded.
 
 
 
 [1]
 For instance, a crucial element of plaintiffs' case is the distinction between combat roles from which women are barred by policy and statute and combat support roles in which women may now serve. Without cross-examination, it is impossible to know exactly what the affiants mean when referring to the role of the Academies in preparing men for 'combat.' Likewise, when affiants declare that the purpose of the Academies is to prepare men for combat, it is unclear whether they mean it is the sole purpose, the primary purpose, or merely a purpose. Plaintiffs' case hangs on resolution of such ambiguities, and plaintiffs should have the opportunity to resolve them in court
 
 
 [2]
 Of course, at trial plaintiffs are not bound to the limited claim they raised for purposes of their partial summary judgment motion. Instead, they may, if they wish, try the cases on their original complaints