**John A. MacNEIL, Plaintiff,**

**v.**

**COLUMBIA BROADCASTING SYSTEM, INC., and Post-Newsweek Stations and Capital Area, Inc. (Incorrectly sued herein as the Washington Post Company), Defendants.**

**Civ. A. No. 903–71.**

United States District Court, District of Columbia.

Jan. 31, 1975.

John A. Kendrick, Edward T. Minor, Philip H. Manning, Washington, D. C., for plaintiff.

Milo G. Coerper and Eugene L. Girden, Washington, D. C., for defendants.

## MEMORANDUM OPINION

WADDY, District Judge.

This is an action for libel. At all times material plaintiff was a colonel in the United States Marines. During 1970 and prior to February 23, 1971, he was assigned as a member of the faculty of the Defense Department's Industrial College of the Armed Forces.

The defendants are Columbia Broadcasting System, Inc., and Post-Newsweek Stations, Capital Area, Inc. (incorrectly sued herein as the Washington Post Company).

Plaintiff claims that he was maliciously libelled by the defendants on February 23, 1971, and on another occasion, in a nationally televised program entitled "The Selling of the Pentagon". He charges that, in "The Selling of the Pentagon", defendants maliciously libelled and defamed his good name by taking his words out of context and changing the sequence of his statements so as to make it appear that he said other than what was actually said during the course of his lecture and to make it look that quotes of others were actually his own words. He complains that defendants "maliciously, recklessly and wantonly created the impression" that plaintiff was deliberately disobeying military service regulations by expressing his own views, by speaking on foreign policy and that he was speaking as the hireling of a defense contractor, *i. e.*, the Caterpillar Tractor Company. He further complains that a postscript to the second broadcast created the impression that he quoted the chief of state of a Southeast Asian government in a misleading and deceptive manner, thereby "indicating plaintiff was a liar."

This case is presently before the Court on defendants' motion for summary judgment, their memoranda of points and authorities in support thereof, and their "statement of undisputable facts", which the Court accepts as a "statement of material facts as to which the moving party contends there is no genuine issue", as required by Local Rule 1–9(g), and the affidavits and exhibits filed in their behalf. Plaintiff has filed a memorandum of points and authorities in opposition to said motion but has filed no "statement of genuine issues" as required by Rule 1–9(g) of this Court when contending that there exists a genuine issue necessary to be litigated. The Court assumes, therefore, that the facts as stated by defendants in their "statement of undisputable facts" are admitted to exist.[1]

"The Selling of the Pentagon" was an hour-long television documentary originally broadcast by defendant CBS on February 23, 1971, through various local television stations, including that of defendant Post-Newsweek Stations, Capital Area, Inc. The documentary was re-televised on March 23, 1971, in its original form, except for the addition of a brief introductory paragraph and a fifteen minute "postscript". The post-

---

1. Rule 1–9 of the Rules of the United States District Court for the District of Columbia provides, *inter alia*:
   (g) *Motions for Summary Judgment.*
   With each motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure there shall be served and filed, in addition to the statement of points and authorities required by section (b) of this rule, a statement of the material facts as to which the moving party contends there is no genuine issue, and shall include therein references to the parts of the record relied on to support such statement. A party opposing such a motion shall serve and file, together with his opposing statement of points and authorities, a concise "statement of genuine issues" setting forth all material facts as to which it is contended there exists a genuine issue necessary to be litigated, and shall include therein references to the parts of the record relied on to support such statement. In determining a motion for summary judgment, the court may assume that the facts as claimed by the moving party in his statement of material facts are admitted to exist except as and to the extent that such facts are controverted in a statement filed in opposition to the motion.

script contained comments by critics of the documentary as first shown, and a rebuttal thereof by the president of CBS News, Richard Salant. Defendants have filed, as exhibits herein, transcripts of the audio portion of the documentary and of the separate postscript.

The focus of "The Selling of the Pentagon" was expressed at its beginning by its narrator, Roger Mudd, as follows:

" . . . [T]here have been recent charges in the press and in Congress that the Department [of Defense] is using . . . public relations funds not merely to inform but to convince and persuade the public on vital issues of war and peace. Ten months ago, CBS News set out to investigate these charges and to examine the range and variety of the Pentagon's public affairs activities. We selected three areas for concentration: direct contacts with the public, Defense Department films, and the Pentagon's use of the media—the press and television." Defendants' Ex. A, p. 1.

In examining the Pentagon's public affairs activities in direct contact with the public, one segment of the program dealt with "National Security Seminars", two-week seminars conducted for both military reserve personnel and members of the general public by officers of the faculty of the Defense Department's Industrial College of the Armed Forces (ICAF). The purpose of these seminars was to present "the position of the United States in world affairs" and the "relationships among the military, political, economic and social factors that contribute to national power, together with a panoramic view of the United States' interests in a troubled and changing world". MacNeil deposition at 39–41. The seminars were given each year at various cities throughout the country. Between 1948 and 1969 the seminar teams traveled, at taxpayer expense, to 163 cities and spoke to 180,000 people. Plaintiff was a member of the seminar team from June, 1967 to June, 1970.

With the knowledge and consent of the ICAF and the participants who were filmed, a CBS crew filmed portions of one such seminar in Peoria, Illinois, between May 13, and May 15 of 1970. The arrangements for the seminar had been handled by the Caterpillar Tractor Company. Plaintiff was a participant in this seminar and was aware that he was being filmed. CBS filmed portions of a lecture given by plaintiff, as well as portions of a later question and answer period in which he took part. The subject of the lecture was Southeast Asia. Plaintiff admits that such lectures "implement" foreign policy of the President. MacNeil deposition at 76.

The filmed lecture lasted approximately 70 minutes. From the body of the lecture itself there were taken for broadcast several excerpts which defendants allege reflected the general themes of the talk, and which they allege illustrated their thesis, i. e., that United States foreign policy was being actively promoted therein. These excerpts, plus part of an answer to a question asked in a later question and answer period, were used in the same segment of the program which concerned the seminar. A further reference to the seminars was made near the end of the program. Mention was made at this point of a Presidential directive against "inappropriate promotional activity", and after noting the possibility of disagreement over what might constitute such activity, it was stated that the Pentagon's seminar team would be in Hampton, Virginia, on March 8 of that year. Plaintiff was no longer a member of the seminar team as of that time.

Plaintiff admits that he actually spoke the words found in each excerpt. He also admits that, with the exception of the sentence "Well, now we're coming to the heart of the problem, Vietnam," which sentence he characterizes as a "lead-in", MacNeil deposition at 69–70,

the excerpts were shown on the program in the same sequence in which they were used in the lecture.

"The Selling of the Pentagon" was produced and written by Peter Davis. Davis has filed an affidavit in support of defendants' motion. He states therein that based upon his research and familiarity with all the facts backing up the documentary's presentation, and the intensive review of the documentary at the time of both broadcasts, that he was confident that the content of the segments at issue were true and accurate. Davis further states that the particular excerpts chosen for broadcast were used because, in his mind, "they were expressions of the themes which Colonel MacNeil was trying to convey in his talk, and also because they were clear examples of statements made to promote U.S. foreign policy". Davis affidavit ¶ 19. Defendants have filed as exhibits herein, copies of directives of the Defense Department, the Navy, Army, and Marine Corps proscribing public discussion of foreign policy by members of the military. Affidavits filed by Richard Salant, president of CBS News, William A. Leonard, Senior Vice President of CBS News, Perry Wolff, the executive producer for "The Selling of the Pentagon", and Roger Mudd, the program's narrator, in support of defendants' motion, attest to their review of the documentary and their confidence in the truth and accuracy of the facts presented therein. Salant and Leonard also attest to the accuracy and truth of the statements made in Salant's postscript following the second broadcast.

■ Defendants allege, and plaintiff does not deny, that the facts herein establish that plaintiff was, during the time that he was a member of the National Security Seminar, a "public official" within the scope of that term as used in New York Times v. Sullivan, 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1963), and its progeny. It is undisputed that plaintiff herein was, at all times relevant to the complaint, a colonel in the United States Marine Corps, and that his participation in the seminar filmed by CBS was in his official capacity as a spokesman for the Defense Department on matters of great public importance, specifically herein, the conflict in Southeast Asia. This Court finds that plaintiff was a "public official" within the ambit of New York Times.

Accordingly, under the rule of law set forth in New York Times, in order to prevail herein, plaintiff has the burden of showing, with "convincing clarity," that defendants acted with " 'actual malice'—that is with knowledge that it [the documentary] was false or with reckless disregard of whether it was false or not." 376 U.S. at 280, 84 S.Ct. at 726.

■ It is for the Court, in the first instance, on a motion for summary judgment by a defendant, to determine, in a New York Times case, whether there has been a prima facie showing of actual malice so as to create a genuine issue of fact. In the case of Wasserman v. Time, Inc., 138 U.S.App.D.C. 7, 424 F.2d 920, 922, (1970) (per curiam), cert. denied, 398 U.S. 940, 90 S.Ct. 1844, 26 L.Ed.2d 273 (1970), Judge Wright, joined in his concurrence by Judge Robinson, set out what he conceived "to be the proper procedure in handling the issue of actual malice in New York Times Co. v. Sullivan cases". He stated:

"In my judgment New York Times Co. v. Sullivan makes actual malice a constitutional issue to be decided in the first instance by the trial judge applying the Times test of actual knowledge or reckless disregard of the truth. [Footnote and cite omitted.] Unless the court finds, on the basis of pretrial affidavits, depositions or other documentary evidence, that the plaintiff can prove actual malice in the Times sense, it should grant summary judgment for the defendant. Washington Post Co. v. Keogh, 125 U.S.App.D.C. 32, 365 F.2d 965, 20 A.L.R.3d 972 (1966), cert. denied, 385

U.S. 1011, 87 S.Ct. 708, 17 L.Ed.2d 548 (1967)."

During the four year course of this litigation, plaintiff herein has presented no evidence, documentary or otherwise, that would tend to raise an issue of fact as to defendants' alleged actual malice. Rather, plaintiff would rely on his pleadings and the recent decision of our Court of Appeals in Waldie v. Schlesinger, D.C.Cir., 509 F.2d 508, decided November 20, 1974, for the proposition that the affidavits of those very persons charged with tortious conduct should not be relied upon by the Court in determining a motion for summary judgment, but that these persons should be subject to plaintiff's cross-examination at trial.

In *Waldie*, a sex-discrimination case, the Court of Appeals found that the District Court had relied on affidavits that asserted " 'the conclusory opinions of military officers,' the very persons charged with unconstitutional discrimination." They said:

> "While that reliance is not *per se* improper, we think these affidavits are too ambiguous to be accepted as fact, untested by cross-examination. [Footnote omitted.]" 509 F.2d at 510.

Plaintiff further grasps at the Court's statement that

> "we think this area of constitutional law is still evolving and is often highly dependent on the facts of each case. Accordingly, a full development of the facts of these cases is essential to any meaningful assessment of appellants' claim against the rapidly changing, and variously interpreted, case law [on the standard for testing sex-based equal protection claims]." 509 F.2d at 510.

He asserts that the recent decision of Supreme Court in Gertz v. Robert Welch, Inc., 418 U.S. 323, 94 S.Ct. 2997, 41 L.Ed.2d 789 (1974), has once again changed the law of libel and requires that this case go to trial for a full development of the facts.

*Waldie*, however, is inapposite to the case at bar. Whereas *Waldie* was a sex-discrimination case based in the Fifth Amendment, the present case has its basis in the First Amendment, and First Amendment cases have generally been accorded special consideration over other constitutionally based cases. In Washington Post Company v. Keogh, 125 U.S.App.D.C. 32, 365 F.2d 965 (1966), a libel case against a publisher by a "public official", the Court had moment to say:

> " . . . Summary judgment serves important functions which would be left undone if courts too restrictively viewed their power. Chief among these are avoidance of long and expensive litigation productive of nothing, and curbing the danger that the threat of such litigation will be used to harass or to coerce a settlement. . . ."

> "In the First Amendment area, summary procedures are even more essential. For the stake here, if harassment succeeds, is free debate. One of the purposes of the *Times* principle, in addition to protecting persons from being cast in damages in libel suits filed by public officials, is to prevent persons from being discouraged in the full and free exercise of their First Amendment rights with respect to the conduct of their government. The threat of being put to the defense of a lawsuit brought by a popular public official may be as chilling to the exercise of First Amendment freedoms as fear of the outcome of the lawsuit itself, especially to advocates of unpopular causes. . . ." 365 F.2d at 968.

Further, the affidavits submitted herein in support of defendants' motion are not ambiguous, as they were in *Waldie*, but specifically attest to the defendants' belief in the truth and accuracy of the challenged segments of the documentary as well as describing in detail the steps taken to verify the facts. Plaintiff's re-

liance on *Gertz, supra,* is also unavailing. *Gertz* did nothing to change the law of libel as it applies to "public officials" under the test set forth in *New York Times. See, e. g.,* Davis v. Schuchat, D.C.Cir., 510 F.2d 731, at 736 decided January 22, 1975. No further factual development is therefore necessary where plaintiff had admitted that he is a public official and where no facts have been presented to raise a genuine issue as to actual malice.

■ Rule 56(e) of the Federal Rules of Civil Procedure provides that in opposing a motion for summary judgment, the allegations of a pleading, without more, are not sufficient to raise a genuine issue. Plaintiff herein, by admitting the facts as set out in defendants' statement of undisputed facts and by failing to submit any documentary evidence to contradict the affidavits filed in support of defendants' motion, has failed to raise a genuine issue of fact as to actual malice. The Court has considered the entire record herein, including the deposition of plaintiff and the transcripts of both the audio portion of "The Selling of the Pentagon" (including the "postscript"), and plaintiff's prepared lecture. Nowhere do we find that plaintiff has raised a genuine issue as to defendants' actual malice.

The circumstances in the case of Thompson v. Evening Star Newspaper Company, 129 U.S.App.D.C. 299, 394 F. 2d 774 (1968), cert. denied, 393 U.S. 884, 89 S.Ct. 194, 21 L.Ed.2d 160, are sufficiently analogous to the circumstances in the present case to merit our attention. *Thompson* was a libel suit by a "public figure", controlled by the law as set forth in *New York Times,* against a publisher. The Circuit Court in affirming the District Court, therein stated:

"Since the very pendency of a libel action may cut across the public interest in free and untrammeled speech on public issues, a public figure cannot resist a newspaper's motion for summary judgment under Rule 56 by arguing that there is an issue for the jury as to malice unless he makes some showing, of the kind contemplated by the Rules, of facts from which malice may be inferred. This our appellant plainly did not do.

"The [defendant] complied with local Rule [1–9(g)] by filing a statement of the material facts as to which movant contends there is no genuine issue. Plaintiff did not comply with the rule's requirement that a party opposing summary judgment file a concise "statement of genuine issues," setting forth all material facts as to which it is contended there exists a genuine issue necessary to be litigated. The local rule specifically provides that in the absence of such statement the court may assume the truth of the facts as set forth by the moving party. The [defendant] accompanied its motion and statement with affidavits by the authors of the allegedly defamatory articles, describing the research undertaken to get their facts, setting forth their belief that the articles as published were true, and specifically denying they were in any way animated by malice towards plaintiff. Plaintiff filed no counter-affidavits disputing any of the assertions in these affidavits. He did not seek deferment of the ruling on the motion for summary judgment in order that he might utilize discovery procedure.[2]

"Plaintiff, in effect, relied on his pleadings to create an issue of fact. That course is impermissible under F.R.Civ.P. 56(e).

2. Plaintiff contends, in his opposition to defendants' motion, that the failure of defendants to produce "some twenty minutes of out takes" somehow raises a material issue of fact. The question of their production, we note, has never been before the Court in the manner provided by the Federal Rules of Civil Procedure.

"Fourteen days after summary judgment had been entered appellant presented an affidavit presenting a theory of malice. We need not consider whether the affidavit would have been adequate to stave off summary judgment if it had been timely presented. We decline to find any abuse of discretion in the refusal of the trial court, in an action of this sort,[10] to

"10. *See* Washington Post Co. v. Keogh . . . ."

reopen the action at this time."

[Footnotes omitted.]   394 F.2d at 776–777.

Plaintiff having failed to raise a genuine issue as to actual malice by defendants, the motion of defendants for summary judgment must, and will, be granted.