Elton E. GRAY, Individually and on
behalf of all other persons similarly
situated, Appellant,

v.

GREYHOUND LINES, EAST, a Division
of Greyhound Lines, Inc., et al.

Mr. Edward BELL et al., Appellants,

v.

EASTERN GREYHOUND LINES et al.

Nos. 75–1159, 75–1631.

United States Court of Appeals,
District of Columbia Circuit.

Argued June 4, 1976.

Decided Oct. 13, 1976.

Robert B. Fitzpatrick, Washington, D.C., for appellants.

James P. Scanlan, Atty., E.E.O.C., Washington, D.C., of the bar of the Supreme Judicial Court of Massachusetts, *pro hac vice,* by special leave of court, with whom Beatrice Rosenberg and Charles L. Reischel, Attys., E.E.O.C., Washington, D.C., were on the brief, for the E.E.O.C. *as amicus curiae.*

David W. Rutstein, Washington, D.C., with whom Robert F. Rolnick and Edward R. Levin, Washington, D.C., were on the brief, for appellee Greyhound Lines, East.

Linda R. Hirshman, Chicago, Ill., was on the brief for appellee National Council of Greyhound Divisions.

Before WRIGHT and ROBINSON, Circuit Judges, and JAMESON,[*] Senior District Judge.

Opinion for the court filed by Circuit Judge J. SKELLY WRIGHT.

J. SKELLY WRIGHT, Circuit Judge:

Plaintiffs-appellants in these two cases, consolidated for purposes of appeal, are bus drivers employed[1] by defendant-appellee Greyhound Lines, East, a division of Greyhound Lines, Inc. (hereinafter Greyhound). They are also members of defendant-appellee National Council of Greyhound Divisions, Amalgamated Transit Union (hereinafter the union), the collective bargaining representative of Greyhound drivers. In their suits, which they sought to maintain as class actions, they charged defendants[2] with maintaining discriminatory hiring practices[3] in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. (1970), and of Section 1 of the Civil Rights Act of 1866, 42 U.S.C. § 1981 (1970). The District Court granted summary judgment for defendants in both suits on the ground that as employees plaintiffs were not injured by the allegedly discriminatory hiring practices and therefore had no standing to challenge those practices. The court also held that any claims plaintiffs might have had as discriminated-against applicants were time-barred and that plaintiffs could not proceed on that basis either individually or as class representatives. Since we conclude that, as to the first basis for the District Court's holding, defendants have not met the heavy burden placed on the proponent of a motion for summary judgment, see, e. g., Adickes v. S. H. Kress & Co., 398 U.S. 144, 153–161, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); Weiss v. Kay Jewelry Stores, Inc., 152 U.S.App.D.C. 350, 352–353, 470 F.2d 1259, 1261–1262 (1972), we reverse.[4]

I

The six[5] plaintiffs in Bell, No. 75–1631, filed essentially identical charges of racial

---

[*] Of the United States District Court for the District of Montana, sitting by designation pursuant to 28 U.S.C. § 294(d) (1970).

1. Plaintiffs Sidbury and Harris were discharged by Greyhound after their suit was filed. They charge that the firings were discriminatory and in retaliation for their participation in the suit. Appellants' br. at 41, 44.

2. The complaints charge the union with "cooperating actively with the Company" in the discriminatory hiring practices and with "failure to take all reasonable steps to oppose the discriminatory employment practices of the Company." App. 11, 93.

3. The central paragraph in the complaints charges that Greyhound

 has discriminated and is continuing to discriminate against the plaintiffs on the grounds of race. The forms of discrimination include, but are not limited to, intentionally engaging in the practice of refusing to hire black applicants as bus drivers because of their race. The methods by which the Company has refused to hire black applicants include, but are not limited to, the following:

 (a) The reliance, as a condition of employment as a bus driver, on personnel tests that disqualified disproportionately large numbers of black as compared to white applicants and that have not been shown to and do not predict performance in the position as a bus driver;

 (b) Reliance, as a condition of employment as a bus driver, on formal educational requirements that operate to disqualify a disproportionately large percentage of black applicants and that have not been shown to and do not predict performance as a bus driver;

 (c) Establishment of an exceptionally low pay scale for bus driver-trainees and for new drivers that operate to deter a disproportionately large percentage of blacks from applying for admission to the driver training program.

 App. 92; id. at 10–11. Although the complaint's wording attempts not to limit itself to hiring discrimination, it is clear both from the proceedings in the District Court and from appellants' brief at, e. g., 6–7, 27, that this action is limited to a challenge to Greyhound's hiring practices and the union's alleged responsibility therefor.

 The original complaint in Bell also challenged Greyhound's seniority system, but that claim has been dropped. See text infra.

4. The District Court's ruling that none of the plaintiffs has a cause of action based on Greyhound's failure to hire him is not challenged on appeal and we see no reason to disturb it.

5. As originally filed the complaint in Bell listed seven plaintiffs. One of the original plaintiffs,

discrimination against Greyhound and the union with the Equal Employment Opportunities Commission (EEOC) in December 1971 and March 1972. The charges alleged that the seniority system was unfair because it perpetuated the effects of the racially exclusive hiring practices Greyhound had followed prior to 1965. In addition, the complainants asserted that Greyhound's present hiring practices continued to exclude blacks from employment as bus drivers. After referring the complaints to the Office of Human Rights of the District of Columbia, which took no action, EEOC assumed jurisdiction. EEOC also took no action until September 29, 1972, when it issued the statutory Notices of Right to Sue. On October 3, 1972 plaintiffs filed their complaint in the District Court.

■ Plaintiffs brought their action on behalf of all

> black persons who are currently employed, or have been employed, or might be employed as bus drivers by Eastern Greyhound Lines at any of its various terminals throughout the Division; and who are members, or have been members, or might become members of the National Council of Greyhound Divisions of the Amalgamated Transit Union; who have

been or continue to be, or might be adversely affected by the unlawful employment practices complained of herein.
\* \* \*

App. 46–47. Greyhound immediately moved for a 60-day stay for the purpose of allowing conciliation under the auspices of EEOC, see 42 U.S.C. § 2000e-5(f)(1), and on January 31 the action was stayed until April 2, 1973. That stay was extended until May 31, 1973 by stipulation of counsel. From then until the end of December, the docket sheet indicates, plaintiffs filed one set of interrogatories to defendant Greyhound while Greyhound took depositions from four plaintiffs.[6] Settlement negotiations were also taking place, but the parties remained far apart.[7]

■ With the stated expectation that their action would assist the settlement negotiations, plaintiffs moved on December 21 to amend their complaint by deleting the allegations relating to the seniority system.[8] Plaintiffs also suggested that if their motion were granted notice should be provided to the putative class members.[9] On January 14, 1974 the court granted plaintiffs' motion to amend, with prejudice to the named plaintiffs and without requiring notice.[10] Simultaneously the court ordered

William Graham, settled his personal controversy with Greyhound and withdrew from the suit. Appellants now suggest that Graham is still a party to this proceeding. See appellants' br. at 7 n.6, 9 n.11. We reject this suggestion since Graham is not listed as a plaintiff in the amended complaint, App. 72, or on the District Court docket sheet. App. 32.

6. During this period there were four status conferences. Appellants imply that the District Court used those conferences to pressure the parties to settle. See appellants' br. at 13–14. We see no sign of improper judicial pressure in the transcripts of the status conferences.

7. See Bell record, Doc. 116.

8. Plaintiffs' memorandum stated that deletion of the seniority claims "would remove a substantial obstacle to settlement of this case," but the motion to amend was not contingent on continuance of settlement negotiations. Moreover, the motion also stated that after substantial informal discovery under the aegis of EEOC plaintiffs "now recognize \* \* \* that proof

of [their seniority] claim will be extraordinarily difficult." Bell record, Doc. 37.

9. The last paragraph of the memorandum of points and authorities in support of plaintiffs' motion reads:

> It is our view that the members of the class should be informed of the pendency of this motion and be allowed an opportunity to intervene in this action through separate counsel if any member of the class desires to continue to litigate the seniority issues at this time.

Id. (footnote omitted).

10. On April 29, 1975 plaintiffs moved for reconsideration of this order, claiming that the motion had been contingent on giving notice and that the sole reason for deleting the seniority claim was plaintiffs' belief that the remainder of the action could be settled. Bell record, Doc. 105c. This motion was summarily denied, and appellants assert that denial, as well as the original order, as error. We see no abuse of discretion in the District Court's decision to grant plaintiffs' motion, which was on its face

the class allegations stricken from the complaint because of plaintiffs' failure to seek certification within the time limit established by Local Rule 1–13(b).[11]

Appellant Gray's suit was filed on February 4, 1974. His complaint was essentially identical with the amended complaint in *Bell*, and he claimed to represent the same class the *Bell* plaintiffs had sought to represent. The *Bell* plaintiffs' attorneys also served as Gray's counsel. On May 1 Gray filed a timely motion to certify the class action. Defendants opposed that motion and moved for summary judgment.[12]

■ Greyhound based its motion for summary judgment on the proposition that, because Gray had been hired by Greyhound on his first application, he had suffered no injury from the challenged hiring practices and therefore had no standing to bring either an individual or a class action against those practices. Gray responded that his injuries resulted from the effects of Greyhound's allegedly discriminatory hiring policies on his treatment at work and on his own psychological well-being.[13] He claimed that by improperly restricting the number of blacks hired Greyhound's policies rendered those blacks who were employed vulnerable to arbitrary discipline, discriminatory treatment in assignment of routes and equipment, and inadequate representation by the union. He also claimed that the isolation he felt as a result of being one of the favored blacks who had slipped through the allegedly discriminatory screening practices adversely affected his mental state.

In a memorandum opinion filed December 3, 1974 the District Court found

noncontingent, or in its refusal to reconsider that decision some 15 months later.

11. Local Rule 1–13(b) provides, in pertinent part:

Within 90 days after the filing of a complaint in a case sought to be maintained as a class action, the plaintiff shall move for a certification under Rule 23(c)(1), Federal Rules of Civil Procedure, that the case may be maintained as a class action. * * *

The local rule took effect Aug. 1, 1973.

The District Court's decision to dismiss the class allegations solely because of plaintiffs' failure to file a timely motion for certification, and without any consideration of the factors made relevant by Rule 23(b), Fed.R.Civ.P., is unusual. *Compare, e. g., Coffin v. Secretary of Health, Education & Welfare,* 400 F.Supp. 953 (D. D.C.) (three-judge court), *appeals pending,* 44 U.S. L. Week 3332, 3346 (Nos. 75–765 & 75–791, Nov. 25 & Dec. 3, 1975); *Umbrico v. American Snacks, Inc.,* 388 F.Supp. 265 (E.D.Pa. 1975); *Edwards v. Schlesinger,* 377 F.Supp. 1091, 1093 (D. D.C.), *rev'd on other grounds,* 166 U.S.App.D.C. 175, 509 F.2d 508 (1974); *and Gilinsky v. Columbia University,* 62 F.R.D. 178 (S.D. N.Y. 1974), *with Walker v. Columbia University,* 62 F.R.D. 63 (S.D. N.Y. 1973). It is not clear that dismissal of the class allegations for failure to comply with the local time limit is consistent with Rule 23(c)(1), Fed.R.Civ.P., which may require the court to determine the merits of the claim to representative status. *See Rodriguez v. East Texas Motor Freight,* 505 F.2d 40, 50 (5th Cir. 1974), *cert. granted,* 425 U.S. 990, 96 S.Ct. 2200, 48 L.Ed.2d 814 (1976); *United States v. Terminal Transport Co.,* 11 EPD ¶ 10704 (N.D. Ga. 1976). *See also EEOC v. Detroit Edison Co.,* 515 F.2d

301, 310 (6th Cir. 1975), *petition for cert. filed,* 44 U.S. L. Week 3150 (Sept. 12, 1975) (No. 75–343). Since we are remanding these cases for further proceedings, including consideration of the motion to certify the class in *Gray,* No. 75–1159, we need not decide whether dismissal of the class allegations in *Bell* was reversible error. All the members of the class in *Bell* would be included in the class in *Gray,* and there is no sound basis upon which one action should proceed on an individual basis if either deserves class-action status.

12. Greyhound alone filed a motion for summary judgment, which was granted from the bench following a hearing on Sept. 27, 1974. The court granted plaintiffs' motion for reconsideration in order to allow consideration of affidavits plaintiffs had filed either just before or on the day of the summary judgment hearing. By the time Greyhound's motion was again set for hearing the union had also moved for summary judgment.

13. These claims are not made in the complaint, but they are present in the depositions and affidavits filed in both of these cases. When ruling on a motion for summary judgment the court must, of course, consider the issues raised by all of the materials properly before it. We have not considered the second affidavit of Dr. Hillabrant, which the District Court struck from the record because it was filed after final judgment had been entered for defendants. On remand it would be appropriate to allow the complaint to be amended to more clearly reflect plaintiffs' claims of current injury resulting from the alleged hiring discrimination.

that plaintiff was hired by defendant Greyhound pursuant to his first and only application; and that plaintiff has not been subsequently discharged nor denied promotional opportunity by defendant Greyhound. In light of the foregoing, the Court finds plaintiff has failed to present a justiciable case or controversy with respect to himself.

App. 22. The court also concluded that Gray could not maintain the action on behalf of those who might have been refused employment on account of their race because he had

> failed to allege in his complaint any specific personal injury in fact suffered by himself on account of defendant Greyhound's hiring practices with respect to others. * * * Moreover, the Court does not view the unlawful employment practices described in § 2000e–2(a) of Title 42, U.S.C., as sufficiently broad in scope to embrace any indirect emotional injuries which plaintiff might have suffered as a result of defendants' conduct with respect to other members of his race.

*Id.* Accordingly, the court denied plaintiff's motion to certify the action as a class action and granted defendants' motions for summary judgment. Approximately six months later the District Court, relying on its earlier decision in *Gray*, granted summary judgment for the defendants in *Bell.*

## II

 The question before us is whether the plaintiffs in these two suits have standing, on the basis of present rather than past injuries,[14] to challenge the allegedly dis-

criminatory hiring policies of defendants.[15] Before considering the question, it is crucially important to notice that it arises in the context of a motion for summary judgment.

 A party is entitled to summary judgment only

> if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. * * *

Rule 56(c), Fed.R.Civ.P. The moving party bears the burden of presenting evidence which demonstrates the nonexistence of any issue of material fact. *Adickes v. S. H. Kress & Co., supra,* 398 U.S. at 159, 90 S.Ct. 1598. Until the movant has met its burden, the opponent of a summary judgment motion is under no obligation to present any evidence. *Id.* at 160–161, 90 S.Ct. 1598. When evidence has been presented, "the inferences to be drawn from the factual material before the court must be viewed in the light most favorable to the party opposing the motion." *Bloomgarden v. Coyer,* 156 U.S.App.D.C. 109, 116, 479 F.2d 201, 208 (1973). Moreover, in determining what issues are material, "[t]he formal issues framed by the pleadings are not controlling * * *; the court must consider the issues presented by the other material offered by the parties on the motion to determine whether the Rule 56 request should be granted." 10 C. Wright & A. Miller, Federal Practice and Procedure: Civil § 2721 at

---

14. *See* note 4 and accompanying text *supra.*

15. In its motion for summary judgment, and in its brief in this court, the union relied primarily on the argument that the plaintiffs did not have standing to pursue their claim. The union also argued to the District Court that the union was entitled to judgment because it had no responsibility for hiring policies and no duty toward those who might be harmed by such policies. *Gray* record, Doc. 32. We cannot uphold the summary judgment for the union on this alternative ground since the union presented no affidavits or other evidence to support its claim

that it was not involved in establishing the hiring policies. *See* text *infra.* Moreover, it is clear that in some circumstances a union may be held responsible for an employer's discriminatory practices if it has not taken affirmative action against those practices. *See Macklin v. Spector Freight Systems, Inc.,* 156 U.S.App. D.C. 69, 478 F.2d 979 (1973); *Myers v. Gilman Paper Corp.,* 392 F.Supp. 413 (S.D. Ga. 1975). *But see United States v. Terminal Transport Co., supra* note 11. On this record we cannot say that the union is clearly without responsibility in this case.

475 (1973); *see Semaan v. Mumford*, 118 U.S.App.D.C. 282, 335 F.2d 704 (1964).

Defendants presented no evidence to prove either that plaintiffs have not suffered the claimed injuries or that there is no causal relationship between the injuries and the allegedly discriminatory hiring practices. Under the standards discussed above, we must therefore conclude that issues of fact related to these aspects of plaintiffs' claims do exist. Thus we could uphold the summary judgment only if we concluded that these issues are not material because the claimed injuries do not confer standing on these plaintiffs to challenge Greyhound's hiring practices. We do not reach that conclusion.

The law of standing has two aspects. As a constitutional doctrine, founded in the restrictions imposed on the judicial power by Article III, the standing rules require that a plaintiff must show "an injury to himself that is likely to be redressed by a favorable decision." *Simon v. Eastern Kentucky Welfare Rights Organization*, 426 U.S. 26, 38, 96 S.Ct. 1917, 1924, 48 L.Ed.2d 450 (1976). This constitutional requirement of an "injury in fact," *Ass'n of Data Processing Service Organizations, Inc. v. Camp*, 397 U.S. 150, 152, 90 S.Ct. 827, 25 L.Ed.2d 184 (1970), is clearly satisfied in this case. There can be no question that

the economic injuries, such as unfair discipline and route assignment, plaintiffs claim to suffer as a result of defendants' practices are sufficient to create a "case or controversy" between these parties.[16] *See, e. g., Ass'n of Data Processing Service Organizations, Inc. v. Camp, supra.* Moreover, the Supreme Court has recognized that injuries to intangible interests fulfill the constitutional requirement as well as do injuries to economic interests. *Sierra Club v. Morton*, 405 U.S. 727, 734, 92 S.Ct. 1361, 31 L.Ed.2d 636 (1972). We therefore see no reason why the psychological injuries which plaintiffs claim are caused by defendants' actions cannot serve as the basis for invoking judicial remedies against defendants.[17] *Cf. Brown v. Board of Education*, 347 U.S. 483, 494, 74 S.Ct. 686, 98 L.Ed. 873 (1954).

In addition to its constitutionally based requirement, standing doctrine incorporates a prudential limitation on the judicial power by demanding "that the interest of the plaintiff, regardless of its nature in the absolute, at least be 'arguably within the zone of interests to be protected or regulated' by the statutory framework within which his claim arises." *Simon v. Eastern Kentucky Welfare Rights Organization, supra*, 426 U.S. at 39 n.19, 96 S.Ct. at 1925, *quoting Ass'n of Data Processing Service Organizations, Inc. v. Camp, supra*, 397 U.S. at 153, 90 S.Ct. 827. In

---

**16.** In *Simon v. Eastern Kentucky Welfare Rights Organizations*, 426 U.S. 26, 96 S.Ct. 1917, 48 L.Ed.2d 450 (1976), plaintiff Organization challenged regulations of the Internal Revenue Service. Plaintiff claimed that the regulations injured its members by allowing hospitals to obtain tax-exempt status even though they would not admit nonpaying patients. The Court held that plaintiff did not have a "case or controversy" against defendant Secretary of the Treasury because the connection between defendant and any injury caused plaintiff's members was speculative. In the present case, by contrast, plaintiffs claim that defendants are the immediate agents of their injuries. Whether plaintiffs will ultimately be able to prove the elements of their claim—the illegality of Greyhound's hiring practices, their injuries, and the connection between the hiring practices and the injuries—cannot be resolved on a motion for summary judgment. *See Harl v. Acacia Mutual Life Ins. Co.*, 115 U.S.App.D.C. 166, 169, 317 F.2d 577, 560 (1963).

**17.** In another recent equal employment case the court stated that it was "willing to recognize psychological injury—the most imperceptible and subjective of all suffering—as a cognizable injury upon which a plaintiff may base his standing to sue." The court held, however, that since the plaintiff had never even applied for a job with the state agencies he claimed discriminated against blacks he could establish no injury particular to himself and therefore did not have standing. *Jackson v. Sargent*, 394 F.Supp. 162, 168–169 (D. Mass.), *aff'd*, 526 F.2d 64 (1st Cir. 1975). In this case, by contrast, plaintiffs are employees who claim that the hiring practices harm them because of those practices' effects in their workplace. *Urban Contractors Alliance v. Bi-State Agency*, 12 FEP Cases 385 (8th Cir. 1976), also relied on by appellees, is another case in which the plaintiffs claimed no injury personal to themselves.

some statutory schemes, however, Congress has itself determined that standing should be granted to anyone who satisfies the constitutional requirements. Title VII is such a statute. "The use in 42 U.S.C. § 2000e–5 of the language 'a person claiming to be aggrieved' shows a congressional intention to define standing as broadly as is permitted by Article III of the Constitution." *Hackett v. McGuire Brothers, Inc.*, 445 F.2d 442, 446 (3d Cir. 1971). Thus, since plaintiffs have claimed injury in fact as a result of defendants' allegedly illegal practices, they have standing to sue under Title VII.[18] *Hackett v. McGuire Brothers, Inc., supra.*

▆ Even if Congress had not decided to grant standing under Title VII to all who are constitutionally eligible, we would reach the same result in this case. Insofar as plaintiffs complain that Greyhound's hiring practices have resulted in their own subjection to discriminatory treatment in the workplace, they are asserting interests clearly within the scope of Title VII's protection against discrimination in the "terms, conditions, or privileges of employment."[19] 42 U.S.C. § 2000e–2. Indeed, if matters such as discipline and assignment of work and equipment were not considered "terms, conditions, or privileges of employment," it would be difficult to give that language any meaning at all.

▆ Plaintiffs' claim that Greyhound's hiring practices support an atmosphere of discrimination which has caused plaintiffs psychological harm also satisfies the second part of the usual test for standing. EEOC, whose interpretation of Title VII is entitled to great weight, *Griggs v. Duke Power Co.*, 401 U.S. 424, 433–434, 91 S.Ct. 849, 28 L.Ed.2d 158 (1971), has consistently held that the statute grants an employee the right to "a working environment free of racial intimidation." EEOC Decision No.

74–84, CCH EEOC Decisions ¶ 6450 (1975); EEOC Decision No. 72–0779, CCH EEOC Decisions ¶ 6321, 4 FEP Cases 317 (1971); EEOC Decision No. 72–0591, CCH EEOC Decisions ¶ 6314, 4 FEP Cases 309 (1971); EEOC Decision No. 71–969, CCH EEOC Decisions ¶ 6193 (1970); EEOC Decision No. 70–09, CCH EEOC Decisions ¶ 6026 (1969). The courts, too, have recognized in Title VII a congressional purpose "to eliminate the inconvenience, unfairness, and humiliation of ethnic discrimination." *See, e. g., Rogers v. EEOC*, 454 F.2d 234, 238–239 (5th Cir.) (opinion of Goldberg, J.), *cert. denied*, 406 U.S. 957 (1972); *Massey v. Illinois Range Co.*, 358 F.Supp. 1271 (N.D. Ill. 1973); *United States v. Medical Society of South Carolina*, 298 F.Supp. 145 (D. S.C. 1969). This policy, the congressional determination that standing to challenge unlawful employment practices should be liberally granted, and the consistent administrative interpretation of the scope of the statute all support the conclusion that plaintiffs' claim implicates an interest "at least * * * 'arguably within the zone of interests to be protected or regulated' " by Title VII.[20]

### III

Since we conclude that defendants established neither that there is no material issue fact in this case nor that they are entitled to judgment as a matter of law, the grant of summary judgment must be reversed and these cases remanded for further proceedings. This remand takes place almost four years after the first of these cases was filed. On remand the District Court should move expeditiously to determine whether either of these cases satisfies the criteria established by Rule 23, Fed.R.Civ.P., and to bring this prolonged litigation to a decision on the merits. *See* 42 U.S.C. § 2000e–

---

**18.** The result is the 'same under § 1981. *See Johnson v. Railway Express Agency*, 421 U.S. 454, 459, 95 S.Ct. 1716, 44 L.Ed.2d 295 (1975).

**19.** EEOC, as *amicus*, urges us to treat these claims of discriminatory treatment as causes of action independent of the claim of hiring discrimination. EEOC br. at 12–15. Appellants themselves have disclaimed this approach,

however, *see* note 3 *supra*, and we decline the Commission's suggestion that we amend their complaint.

**20.** The result is the same under § 1981. *See Johnson v. Railway Express Agency, supra* note 18, 421 U.S. at 459, 95 S.Ct. 1716.

5(f)(4) and (5) (Supp. II 1972). In doing so, the District Court will of course be free to exercise its considerable discretion to determine the appropriate timing of litigation in a manner consistent with the interests of justice.[21]

*Reversed and remanded.*

---

**21.** Plaintiffs noted as issues raised on appeal, although they did not argue in their brief, several procedural rulings made during the course of the litigation below. Since we are remanding for further proceedings, it has not been necessary for us to discuss most of those rulings. *But see* notes 10 & 11 *supra.* We do note, however, that most of the contested rulings were the product of plaintiffs' consistent practice of waiting until the day before, or even the day of, a scheduled hearing before taking any steps to advance the litigation. We admonish plaintiffs' counsel on remand to cooperate fully with the District Court's efforts to bring these suits to a fair and expeditious conclusion.