**Marcus A. ARNHEITER, Plaintiff-Appellant,**

v.

**RANDOM HOUSE, INC., and Neil Sheehan, Defendants-Appellees.**

**No. 76–1753.**

United States Court of Appeals, Ninth Circuit.

July 17, 1978.

Leon S. Wolk (argued), Fort Lee, N. J., for plaintiff-appellant.

Walter R. Allan (argued), San Francisco, Cal., for defendants-appellees.

Before BROWNING and ANDERSON, Circuit Judges, and D. WILLIAMS, District Judge.*

PER CURIAM:

Neil Sheehan wrote a book, published by Random House, Inc., reporting events which occurred during appellant's 99-day command of a Navy war ship, the Vance, on patrol duty during the Vietnam war. Captain Arnheiter was removed from his command by superior officers when they concluded from irregularities in his conduct that he was not fit for command. Arnheiter's persistent efforts to bring about a reversal of this decision became the subject of much public notice and attention from jour-

---

* The Honorable David W. Williams, United States District Judge for the Central District of California, sitting by designation.

nalists. The Navy eventually upheld the removal, and no Court of Inquiry was convened, despite appellant's urging. Sheehan's book concluded that the removal was proper.

■ The trial court granted summary judgment in favor of the author and publisher on the ground that the allegedly libelous material was protected under the rule of *New York Times v. Sullivan,* 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964). On appeal, Arnheiter argues: (1) that he is not a public official or public figure within the meaning of *New York Times,* (2) that summary judgment was improper because there was a genuine jury issue, i. e., whether the material was published with knowledge of its falsity, or with reckless disregard of the truth, and (3) that further discovery should have been permitted.

In *Rosenblatt v. Baer,* 383 U.S. 75, 85, 86 S.Ct. 669, 675, 15 L.Ed.2d 597 (1966), it is said:

> "Criticism of government is at the very center of the constitutionally protected area of free discussion. Criticism of those responsible for government operations must be free, lest criticism of government itself be penalized. It is clear, therefore, that the 'public official' designation applies at the very least to those among the hierarchy of government employees who have, or appear to the public to have, substantial responsibility for or control over the conduct of governmental affairs."

The commanding officer of a United States Navy vessel during war is in control of governmental activity of the most sensitive nature. Such a person holds a position that invites "public scrutiny and discussion" (*Rosenblatt, ibid.* n. 13) and fits the description of a public official under *New York Times.* See *Henry v. Collins,* 380 U.S. 356, 85 S.Ct. 992, 13 L.Ed.2d 892 (1965); *Garrison v. Louisiana,* 379 U.S. 64, 85 S.Ct. 209, 13 L.Ed.2d 125 (1964).

After *New York Times,* the Supreme Court extended the constitutional privilege to defamatory criticism of "public figures." See *Curtis Publishing Co. v. Butz* and *Associated Press v. Walker,* 388 U.S. 130, 162, 87 S.Ct. 1975, 18 L.Ed.2d 1094 (1967). Appellant claims he is not a public figure within the meaning of these cases because he did not thrust himself into controversy,[1] but only sought redress for what he contends was wrongful removal. He cites *Time, Inc. v. Firestone,* 424 U.S. 448, 96 S.Ct. 958, 47 L.Ed.2d 154 (1976) in which a divorcee prevailed in a libel action against a magazine which had inaccurately reported that the divorce was granted on grounds of adultery and extreme cruelty. It was held that she fell outside the definition of a public figure for two reasons: first, her divorce was not a "public controversy," despite considerable attention in the local press given to testimony of infidelity; and, second, she had not freely chosen to publicize the details of her married life. In contrast, Arnheiter's removal from command of a war vessel implicated critical issues of public concern, i. e., military decision-making in the conduct of war, and the selection of those entrusted with our national defense. Arnheiter did much more than seek reversal of his removal. He used every conceivable effort to gain public exposure and to make his case a "cause célèbre." He successfully courted massive publicity and eventually pressured one congressman to hold a series of ad hoc hearings on the subject of his removal. These hearings inspired Sheehan to join many other journalists who took an unusual interest in the case, ultimately resulting in Sheehan's authorship of the complained of "Arnheiter affair." Under these circumstances, we hold that Arnheiter qualifies under both the public official and public figure tests and that the book must be judged against the *New York Times* standard of actual malice.

When the constitutional privilege is established, the allegedly libeled person must come forward with "clear and convincing

---

1. "More commonly, those classed as public figures have thrust themselves to the forefront of particular public controversies in order to influence the resolution of the issues involved." *Gertz v. Welch,* 418 U.S. 323, 345, 94 S.Ct. 2997, 3009, 41 L.Ed.2d 789 (1974).

proof that the defamatory falsehood was made with knowledge of its falsity or with reckless disregard for the truth." *Gertz v. Welch,* 418 U.S. 323, 342, 94 S.Ct. 2997, 3008, 41 L.Ed.2d 789 (1974). This is for judicial determination. *New York Times v. Sullivan, supra.* "Reckless disregard" has been held to mean "those false statements made with the high degree of awareness of their probable falsity." *Garrison v. Louisiana, supra,* 379 U.S. at 74, 85 S.Ct. at 216. Sheehan did not proceed irresponsibly with his writing effort. He spent more than three years researching the data, reviewing sworn testimony taken at the various hearings, and talking with individuals who both supported and criticized Arnheiter's conduct. Appellant's argument that Sheehan recklessly attributed insanity to him simply misstates the facts.

Arnheiter's final argument is that he was not permitted sufficient discovery. This case was over 3 years old when the summary judgment motion was heard, and a review of the records shows that appellant deposed both appellees and demanded and received Sheehan's research materials. There was no abuse of discretion in not permitting additional discovery.

AFFIRMED.