Borenstein, J.
Plaintiff brought suit against defendants for alleged defamatory statements made about him in the book Trapped at Pearl Harbor (“Trapped'). The book was written by defendant Young, originally published in hardcover by Naval Institute Press, and reprinted in paperback by Dell Publishing. Dell Publishing and Naval Institute Press (hereafter “defendants”) have moved for a determination that plaintiff be treated as a “public official” for purposes of his defamation action. For reasons set forth more fully below, defendants motion to determine status is allowed.
BACKGROUND
The facts which are relevant to this motion are undisputed. Plaintiff entered the Naval Academy in 1937 as the result of a Texas congressman’s appointment. He became an officer, holding the rank of ensign, upon his graduation from Annapolis four years later. Plaintiff reported to Pearl Harbor for duty aboard the USS Oklahoma on March 12, 1941. As ofDecember 7, 1941, plaintiff held three positions of responsibility on the Oklahoma: he was “assistant ship’s censor,[2] a position requiring security clearance; he was the catapult officer responsible for one of the ship’s scout planes; and he was one of two officers in charge of Turret No. 4. Plaintiff had the authority to issue orders to all of the enlisted men under his command, and they were obligated to follow those orders at the risk of immediate disciplinary action.
Plaintiff was second in command on Turret No. 4, which had a crew of 55 enlisted men; Ensign Rommel was in charge. However, when the Oklahoma came under fire on December 7, 1941, Rommel was absent from Turret No. 4.[2] Therefore, plaintiff, as he has acknowledged, was in command of Turret No. 4 during the events recounted in the allegedly defamatory passages of Trapped.
DISCUSSION
Where, as here, the relevant facts are not disputed, it is for the Court to determine whether plaintiff should be treated as a public official. Rosenblatt v. Baer, 383 U.S. 75, 88 (1966); Stone v. Essex Cty. Newspapers, Inc., 367 Mass. 849, 862 (1975).
In New York Times Co. v. Sullivan, 376 U.S. 254 (1964), the Supreme Court afforded heightened protection to writers and publishers who criticize public officials. The Court held that “constitutional guarantees” required that a public official be barred from recovering damages for a defamatory falsehood concerning his/her official capacity unless he/she proves that the statement was made with “actual malice.” Id. at pp. 279-80. The Court opined that the heightened protection was necessary to nurture the “profound national commitment to the principle that debate on public issues should be uninhibited, robust and wide-open,” even though such debate “may well include vehement, caustic, and sometimes unpleasantly sharp attacks on government and public officials.” Id. at 270.
*124 Two years later, in Rosenblatt, 383 U.S. at 85, the Court defined “public official” as one who has, or appears in the eyes of the public to have, “substantial responsibility for or control over the conduct of government affairs.” The Court explained that the heightened standard of actual malice was only applicable where “a position in government has such apparent importance that the public has an independent interest in the qualifications and performance of the person who holds it, beyond the general public interest in the qualifications and performance of all government employees.” Id. at 86. The Court reiterated the public policy underpinnings of the heightened standard, first enunciated in New York Times, noting that “(c]riticism of government is at the very center of the constitutionally protected area of free discussion. Criticism of those responsible for government operations must be free, lest criticism of government itself be penalized.” Id. at 85.
Since Rosenblatt, lower courts have applied the public official standard in a myriad of factual scenarios. The most instructive applications of the standard, for purposes of this case, are those in which the allegedly defamed figure was a member of the military.
In Arnheiter v. Random House, Inc., 578 F.2d 804 (9th Cir. 1978), plaintiff was the commanding officer of a U.S. naval vessel during the Vietnam War. Plaintiff was removed from command by superiors concerned with his “irregular” behavior. His removal was the subject of a book in which the author concluded that the relief from command was proper. The Court held that plaintiff was a public official given that his position invited “public scrutiny and discussion.” Id. at p. 805. In particular, the Court noted that the commanding officer of a naval vessel during war “is in control of government activity of the most sensitive nature." Id.
In Medina v. Time, Inc., 319 F.Supp. 399 (D.Mass. 1970), the plaintiff was an army captain who reportedly participated in the infamous My Lai massacre. The Court held that plaintiff was “clearly” a public official “within even the original scope of New York Times, ” because plaintiff was a captain and the alleged defamatory statements concerned his actions in that capacity. Id.
Other courts have found that military officers were public officials even though they were not acting on the “front lines” during a time of war. In MacNeil v. Columbia Broadcasting System, Inc., 66 F.R.D. 22, 25 (D.D.C. 1975), plaintiff was a Marine Corps colonel who served as a spokesman for the Defense Department during the Vietnam conflict. The court considered it significant, for purposes of determining plaintiffs status, that the alleged defamatory comments concerned his actions in his capacity as a spokesman for the Defense Department “on matters of great public importance, specifically herein, the conflict in Southeast Asia.” Id. See also Secrist v. Harkin, 874 F.2d 1244, 1247 (8th Cir. 1989) (Marine Corps lieutenant colonel serving on the staff of a United States senator); Davis v. Costa-Gavras, 595 F.Supp. 982, 987 (S.D.N.Y. 1984) (Navy captain serving as Commander of the U.S. Military Group and Chief of U.S. Navy Mission to Chile was public official within the meaning of New York Times).
Although the determination of whether a plaintiff is a public official is heavily dependent upon the particular facts of each case, certain principles may be gleaned from the cases discussed above. First, one’s rank in the military, alone, is not sufficient to confer or preclude public official status. Second, in deciding whether a military officer, regardless of rank, is a public official, courts take into account the context in which the officer acted. See e.g. Medina (leading enlisted men in raid on village); Arnheiter (commanding naval vessel on patrol duty during wartime); MacNeil (briefing public on conduct of military operations); Davis (commanding U.S. military group in Chile). One factor which was not addressed by these courts is whether the alleged defamatory remarks concerned an officer’s actions under fire.[3] In the Court’s opinion, this is a significant consideration because the command of men and women in the face of enemy fire is a governmental activity of a most sensitive nature, and is one which clearly has such importance that the public has an independent interest in the qualifications and performance of the person who executes such a vital function.
Bearing in mind these principles, the Court determines that a military officer, under fire from the enemy and responsible for the lives of men and women under his/her command, is a public official within the meaning of New York Times and Rosenblatt.
Applying the rule to the facts of this case, the inescapable conclusion is that plaintiff should be treated as a public official. Aside from his credentials and training as a naval officer, plaintiff acknowledges that he was the officer in command of Turret No. 4 on December 7, 1941 at the time of the Japanese attack. As such, he was ultimately responsible for issuing orders to the 55 enlisted men under his command. Clearly, his performance under fire would invite public scrutiny and discussion, especially given that he was empowered and entrusted to make decisions with potentially dire consequences for those under his command. The allegedly defamatory passages of Trapped at Pearl Harbor concerned plaintiffs performance in that context. The heightened protection afforded to critics of public officials is especially appropriate in such circumstances. Any commentary about plaintiffs performance as a naval officer under fire should be governed by the actual malice standard enunciated in New York Times.
Plaintiff asserts that the Court cannot take into account the “circumstances” out of which the allegedly defamatory statements arose, but instead must only consider whether plaintiffs position, viewed alone, *125 would invite public scrutiny and discussion. Consequently, plaintiff argues, he should not be treated as a public official because his military training, rank and presence aboard the Oklahoma did not invite public scrutiny and discussion apart from the public’s interest in the events of December 7, 1941. In support of his argument, plaintiff cites footnote 13 of Rosenblatt, wherein the Supreme Court noted, in dicta, that “the employee’s position must be one which would invite public scrutiny and discussion of the person holding it, entirely apart from the scrutiny and discussion occasioned by the particular charges in controversy.” 383 U.S. at 86. Assuming for the moment that plaintiffs assertion is correct,[4] the rule set forth in this decision does not take into account the particular charges in controversy, rather it takes into account “context.” This is a distinction with a difference. The Court does not decide, as a general rule, that all military officers, by virtue of their rank and all of the responsibilities and privileges attendant thereto, are public officials. Rather, the Court determines that military officers, in certain predictable contexts, should be treated as public officials. One such context arises when an officer is in command of men and women under enemy fire.[5] A writer who criticizes an officer’s actions in that context is entitled to the heightened protection of the actual malice standard.
ORDER
For the foregoing reasons, it is hereby ORDERED that defendants’ motion to determine status is ALLOWED. The plaintiff will be treated as a “public official” for purposes of this defamation action.

 In fact, it was Rommel who announced the Japanese attack over the ship’s loudspeaker.

 Defendant North River Press provided an overview of military scholarship which has chronicled the misdeeds of junior officers under fire. Otherwise, the compendium of cases provided by defendants is curiously devoid of any case in which the alleged defamatory statements concerned a military officer’s actions under fire.

 Such an interpretation of footnote 13 is questionable given the fact that courts consistently take into account factors in addition to an individual’s military rank when determining whether the defamed figure was a public official.

 Despite the plaintiffs inevitable protestations to the contrary, the Court does not determine that plaintiff was a public official because he was on the USS Oklahomain Pearl Harbor on December 7, 1941 and the public subsequently developed an enhanced interest in the events of that day. Put another way, plaintiff became a public official when the Japanese attacked, not when he allegedly committed the acts which were attributed to him in Trapped.