Diane **LEIBOVITZ**, Plaintiff–Appellee,

v.

**NEW YORK CITY TRANSIT AUTHORITY, Defendant–Appellant,**

**Joseph Hoffman and Monroe Easter, Defendants.**

Nos. 325, 326, Dockets 98–7757, 99–7313.

United States Court of Appeals, Second Circuit.

Argued Nov. 1, 1999.

Decided June 6, 2001.

Merrick T. Rossein, Steel, Bellman, Ritz & Clark, New York, NY, for Plaintiff–Appellee.

Barbara C. Neale, New York, N.Y. (Martin B. Schnabel, Vice President and General Counsel, Ira J. Lipton, New York City Transit Authority, on the brief), for Defendant–Appellant.

Herbert Eisenberg, Davis & Eisenberg, New York, N.Y. (Samuel R. Bagenstos, Paula A. Brantner, on the brief), for Amicus Curiae the National Employment Lawyers Association.

Ann Elizabeth Reesman, McGuiness & Williams, Washington, DC, for Amicus Curiae The Equal Employment Advisory Council.

Before: McLAUGHLIN, JACOBS and SACK, Circuit Judges.

JACOBS, Circuit Judge:

The New York City Transit Authority (the "Transit Authority") appeals from the judgment of the United States District Court for the Eastern District of New York (Weinstein, J.), after a jury trial, imposing $60,000 in damages for sexual harassment under Title VII of the Civil Rights Act of 1964, 78 Stat. 253, as amended, 42 U.S.C. § 2000e et seq. Plaintiff Diane Leibovitz prevailed on the theory that Title VII afforded her a remedy because she was emotionally distressed (i) by hearsay alleging that other women in other parts of her workplace were subjected to sexual harassment and (ii) by her employer's inadequate response to her complaints about the alleged harassment. The Transit Authority claims error in the trial court's refusal to enter judgment as a matter of law, grant a new trial or amend the judgment pursuant to Fed.R.Civ.P. 50(b) and 59(a) and (e), respectively. The Transit Authority also appeals the court's supplemental judgment granting attorneys' fees of $129,575.

We conclude, based on the evidence adduced at trial, that Leibovitz was not subject to the kind of pervasive and severe hostile work environment required to recover damages under Title VII and therefore presented no cognizable claim. Her claim rests on emotional trauma allegedly suffered due to her belief that other women in other parts of her workplace were harassed and that the defendant was not vigorously investigating those complaints. We hold that Title VII's prohibition against hostile work environment discrimination affords no claim to a person who experiences it by hearsay. We therefore reverse the district court's ruling that sufficient evidence existed to support the jury's finding that Leibovitz's work environment was hostile and abusive. As this holding requires dismissal of the only claim on which Leibovitz prevailed at trial, and thus disposes of this appeal, we do not reach the Transit Authority's other claims of error.

## BACKGROUND

### A. Facts

We recount only those facts bearing upon Leibovitz's claim for hostile work environment discrimination, which is the only claim on which she prevailed in the district court and the only claim that is the subject of this appeal.

Diane Leibovitz was hired by the Transit Authority in 1985. Beginning in 1990, and at all relevant times, she was one of 40 Deputy Superintendents (out of 44,000 total employees). Starting in the fall of 1992, Leibovitz was stationed at the 240th Street Maintenance Shop (the "Shop").

She worked as Deputy Superintendent of Inspections (overseeing the process of inspecting subway cars) until August 1993, when she became Deputy Superintendent of Repairs (in charge of the unscheduled repair of subway cars and facilitating traffic).

In September 1993, Leibovitz learned from Marva Jones, a car inspector, that a female subway car cleaner named Velma Lorrick had complained that she was being harassed by the male Deputy Superintendent who supervised her, Russell Woodley.[1] Jones also told Leibovitz that another female car cleaner, Joanne Medina—who had previously complained to Leibovitz about Woodley's behavior—had been transferred to another shop that was closer to her home.[2] According to Jones, Woodley engaged in a pattern of harassing women by making remarks, touching them and "coming on to them."

Leibovitz admits that she was unaware of the alleged harassment when it was happening. Specifically, she was not present for the alleged incident between Lorrick and Woodley and never spoke to Lorrick about Lorrick's complaint. In any event, Lorrick and Medina did complain about Woodley to others in management. A lengthy investigation ensued, but the parties disagree as to the vigor with which it was carried out.

Leibovitz claimed that she suffered a major depressive disorder during the years she was in the Shop, and that the disorder flowed from her frustrated attempts to secure a remedy for the women alleging harassment.

---

**1.** Woodley approached Leibovitz and told her that Lorrick was upset about an altercation between them but insisted that he never did anything to her, prompting Leibovitz to ask Jones what had happened.

**2.** It is not clear from the evidence whether Medina was transferred because of Woodley's behavior towards her or for some other reason, such as convenience. Leibovitz admits that she never learned the reason for Medina's transfer.

Leibovitz also alleged that she herself was harassed, but the jury rejected that claim. That rejected claim was the sole allegation that Leibovitz had any first-hand experience or knowledge of harassment in the Shop. When asked at oral argument in this Court whether Leibovitz witnessed harassment, counsel for Leibovitz responded, "No. There is no evidence [of that] except that which occurred against her," and conceded that "[s]he did not see any of these incidents." Leibovitz's injury therefore was wholly psychological and rests solely on the alleged harassment of other women out of her presence: "She was never discriminated against on the basis of her sex, nor was she personally the target of inappropriate sexual behavior. There was, however, evidence of sexual harassment of other women in her shop that caused her emotional distress." *Leibovitz v. New York City Transit Auth.*, 4 F.Supp.2d 144, 146 (E.D.N.Y.1998).

### B. Proceedings below

Leibovitz's complaint, filed on September 22, 1995, asserted claims under Title VII, the United States Constitution and New York State law. The case went to trial on January 12, 1998. The constitutional claims were dismissed by Judge Weinstein prior to jury deliberation.[3] As to the Title VII claims, Judge Weinstein asked the jury to answer three questions: (1) "Did the defendant New York City Transit Authority discriminate against plaintiff because of her gender ... ?"; (2) "[D]id the Transit Authority retaliate against plaintiff for complaining of discrimination on behalf of other women, yes or no?"; and (3) "[D]id the Transit Authority

violate [plaintiff Diane Leibovitz's] rights by deliberate indifference to widespread discriminatory practices [and] sexual misconduct against others, yes or no?" As to the last question, the jury instruction read as follows:

Plaintiff also claims that she was the victim of sex discrimination adverse to herself, in that the Transit Authority was deliberately indifferent to sexual harassment generally.

Plaintiff must show that her workplace was so permeated with discriminatory sexual behavior that was so severe or pervasive that it altered the conditions of her employment and created an abusive working environment for her. To be pervasive, the incidents of discrimination must be repeated and substantially continuous—over a substantial period of time.

The jury returned a verdict for the Transit Authority on the first two questions and for Leibovitz on the third question, and awarded her $60,000.

Following the verdict, the Transit Authority moved for judgment as a matter of law pursuant to Fed.R.Civ.P. 50(b), or, in the alternative, for a new trial or amended judgment, pursuant to Fed.R.Civ.P. 59(a) and (e), respectively. Judge Weinstein denied the motions and memorialized the jury's finding in an Order dated May 5, 1998. *See Leibovitz v. New York City Transit Auth.*, 4 F.Supp.2d 144 (E.D.N.Y. 1998). On February 25, 1999, Judge Weinstein awarded counsel for Leibovitz $129,575 in attorneys' fees and $13,194.10 in costs and expenses, for a total of $142,769.10.

This appeal followed.

---

3. Judge Weinstein dismissed Leibovitz's second cause of action (brought pursuant to 42 U.S.C. § 1983 and alleging violations of the First and Fourteenth Amendments) as duplicative of her Title VII claims and elected to charge the jury solely under Title VII and New York law. Leibovitz consented at the time and does not challenge the dismissal on appeal.

## DISCUSSION

This Court has jurisdiction to review the final judgment of the district court pursuant to 28 U.S.C. § 1291. Notices of appeal were timely filed on May 27, 1998 (as to the judgment on liability) and on March 12, 1999 (as to the judgment on attorneys' fees).

 The Order denying the motion for judgment as a matter of law is reviewed de novo. *See Goldhirsh Group, Inc. v. Alpert,* 107 F.3d 105, 108 (2d Cir. 1997); *Valley Juice Ltd. v. Evian Waters of France, Inc.,* 87 F.3d 604, 613 (2d Cir. 1996). The denial of a motion for new trial is reviewed for abuse of discretion. *See Baker v. Dorfman,* 239 F.3d 415, 422 (2d Cir.2000).

### I. Standing

The district court ruled that Leibovitz had standing to raise a hostile work environment claim, *see Leibovitz,* 4 F.Supp.2d at 150, and both parties identify standing as a determinative threshold issue. "[T]he question of standing is whether the litigant is entitled to have the court decide the merits of the dispute or of particular issues. This inquiry involves both constitutional limitations on federal-court jurisdiction and prudential limitations on its exercise." *Warth v. Seldin,* 422 U.S. 490, 498, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975). Prudential and constitutional rules of standing are alike "threshold determinants of the propriety of judicial intervention." *Warth,* 422 U.S. at 518, 95 S.Ct. 2197.

We agree with the district court that Leibovitz has standing under Article III to raise a claim of hostile work environment to redress psychological and emotional injuries. Unlike the district court, however, we do not believe that the facts of this case present an issue as to whether Congress intended prudential standing limitations to apply to Title VII, and we therefore do not decide that question.

### A. Constitutional Standing

 Constitutional standing "is the threshold question in every federal case, determining the power of the court to entertain the suit". *Warth,* 422 U.S. at 498, 95 S.Ct. 2197; *accord Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.,* 454 U.S. 464, 475–76, 102 S.Ct. 752, 70 L.Ed.2d 700 (1982) ("Those who do not possess Art. III standing may not litigate as suitors in the courts of the United States."). Article III's requirement of a "case or controversy" obligates the federal courts to hear only suits in which the plaintiff has alleged some actual or threatened harm to him or herself, as a result of a "putatively illegal action". *Linda R.S. v. Richard D.,* 410 U.S. 614, 617, 93 S.Ct. 1146, 35 L.Ed.2d 536 (1973); *accord Gladstone, Realtors v. Village of Bellwood,* 441 U.S. 91, 99, 99 S.Ct. 1601, 60 L.Ed.2d 66 (1979) ("In order to satisfy Art. III, the plaintiff must show that he personally has suffered some actual or threatened injury as a result of the putatively illegal conduct of the defendant."). Moreover, the courts may hear only suits that may be redressed through a judgment of the court, *see Gladstone,* 441 U.S. at 100, 99 S.Ct. 1601, and in which the harm complained of is "distinct and palpable", *Warth* 422 U.S. at 501, 95 S.Ct. 2197.

 The jury found the Transit Authority liable for hostile work environment discrimination against Leibovitz because of the Transit Authority's indifference to the alleged discrimination against other women.[4] To reach the question of employer

---

4. Because we ultimately conclude that the judgment should be reversed, we express no opinion as to whether the standard employed by the district court in imposing liability is

liability, the jury was required to find that Leibovitz was emotionally traumatized as a result of her workplace being permeated by sexual discrimination. We hold that this injury is sufficient to establish standing under Article III. Leibovitz has alleged an actual injury to herself: the emotional trauma she suffered as a result of an allegedly hostile work environment. *See United States v. Students Challenging Regulatory Agency Procedures (SCRAP)*, 412 U.S. 669, 686, 93 S.Ct. 2405, 37 L.Ed.2d 254 (1973) (citing *Sierra Club v. Morton*, 405 U.S. 727, 734, 92 S.Ct. 1361, 31 L.Ed.2d 636 (1972) for the proposition that noneconomic injury can satisfy Art. III's "injury in fact" requirement). Leibovitz's alleged injury is distinct and palpable, regardless of whether other women working in the same hostile environment would also have claims for relief. *See Warth*, 422 U.S. at 501, 95 S.Ct. 2197. The fact that the injury to Leibovitz from working in a hostile environment may have been an indirect result of the harassment of other women does not necessarily preclude Article III standing. *See id.* at 504–05, 95 S.Ct. 2197 ("When a governmental prohibition or restriction imposed on one party causes specific harm to a third party ... the indirectness of the injury does not necessarily deprive the person harmed of standing to vindicate his rights."). Finally, this injury, if proved, is remediable through a damage award. *See Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 65–66, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986) (holding that noneconomic injury resulting from "a hostile environment based on discriminatory sexual harassment" is actionable under Title VII) (emphasis omitted). The district court was correct in determin-ing that Leibovitz had Article III standing to bring this claim.

## B. Prudential Standing

The Supreme Court has articulated prudential standing requirements in *Warth v. Seldin:*

> Apart from [Article III's] minimum constitutional mandate, this Court has recognized other limits on the class of persons who may invoke the courts' decisional and remedial powers.... [E]ven when the plaintiff has alleged injury sufficient to meet the "case or controversy" requirement, this Court has held that the plaintiff generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties.

422 U.S. at 499, 95 S.Ct. 2197. "Essentially, the standing question in such cases is whether the constitutional or statutory provision on which the claim rests properly can be understood as granting persons in the plaintiff's position a right to judicial relief." *Id.* at 500, 95 S.Ct. 2197. Only "persons to whom Congress has granted a right of action, either expressly or by clear implication, may have standing to seek relief on the basis of the legal rights and interests of others...." *Id.* at 501, 95 S.Ct. 2197.

 Title VII provides a private right of action for a "person claiming to be aggrieved ... by [an] alleged unlawful employment practice." 42 U.S.C. § 2000e–5(f)(1). What it means to be "aggrieved" is a question of standing, and questions of standing "often turn[ ] on the nature and source of the claim asserted." *Warth*, 422 U.S. at 500, 95 S.Ct. 2197.

correct in light of the Supreme Court's recent pronouncements in *Faragher v. City of Boca Raton*, 524 U.S. 775, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998) and *Burlington Industries v. Ellerth*, 524 U.S. 742, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998) on employer liability for Title VII violations.

The Supreme Court has not considered whether Congress intended standing under Title VII to be as broad as standing under Article III, or whether additional qualifications are to be judicially imposed, as appropriate. "Congress may grant an express right of action to persons who otherwise would be barred by prudential standing rules." *Id.* at 501, 95 S.Ct. 2197; *accord Childress v. City of Richmond,* 134 F.3d 1205, 1209 (4th Cir.1998) (en banc) (Luttig, J., concurring) ("Congress may, if it chooses, override prudential standing limitations and authorize all persons who satisfy the Constitution's standing requirements to bring particular actions in federal court."); *Innovative Health Sys., Inc. v. City of White Plains,* 117 F.3d 37, 46 (2d Cir.1997) ("The [defendant] appropriately looks to the [Rehabilitation Act's] language to determine whether Congress granted an express right of action to persons who otherwise would be barred by prudential standing rules."). The scope of Title VII's private right of action therefore depends on whether Congress intended to insulate such an action from prudential concerns.

A number of courts have considered whether prudential concerns limit standing under Title VII and have denied standing to plaintiffs alleging injury because of third-party discrimination. *See Bermudez v. TRC Holdings, Inc.,* 138 F.3d 1176, 1180 (7th Cir.1998) (holding white female employee lacks standing under Title VII to allege injury on behalf of black applicants to employment agency who were discriminated against because of race); *Childress,* 134 F.3d at 1209 (Luttig, J., concurring) ("[B]ecause the white male plaintiffs in the present case assert only the rights of third-parties to be free from race or sex-based discrimination in the workplace, they have not stated a cause of action under Title VII."); *Patee v. Pacific Northwest Bell Tel.,* 803 F.2d 476, 478 (9th Cir. 1986) ("The male workers do not claim that they have been discriminated against because they are men.... [T]he male workers cannot assert the right of their female co-workers to be free from discrimination based on their sex.").

In these cases, the plaintiff asserted Title VII rights on behalf of a protected class of employees to which the plaintiff did not belong. Leibovitz, however, is a member of the protected class that she claims was subjected to discrimination; her case went to the jury on the issue of whether she herself suffered psychological harm because her own work environment became hostile through discrimination against other women. The cases addressing prudential standing and Title VII are therefore distinguishable; and whether or not prudential concerns limit standing under Title VII, we conclude that the issue is not presented by this case, and we decline to decide it.[5]

---

**5.** Another line of cases finds standing under Title VII where plaintiffs have claimed that discrimination against third parties caused them to lose the benefits of interracial association. Those cases rely upon *Trafficante v. Metropolitan Life Ins. Co.,* 409 U.S. 205, 211–12, 93 S.Ct. 364, 34 L.Ed.2d 415 (1972) (holding white tenants of apartment complex have standing to sue for landlord's discrimination against nonwhites, under wording and legislative history of Title VIII of the Civil Rights Act of 1968). *See Clayton v. White Hall Sch. Dist.,* 875 F.2d 676, 679–80 (8th Cir.1989) (finding prudential standing for plaintiff alleging hostile work environment injury as a result of "lost benefits of associating with persons of other racial groups"); *EEOC v. Mississippi College,* 626 F.2d 477, 483 (5th Cir.1980) (relying on *Trafficante* to hold that a white woman "may charge a [Title VII] violation of her own personal right to work in an environment unaffected by racial discrimination" provided she meets Art. III requirements); *Waters v. Heublein, Inc.,* 547 F.2d 466, 469 (9th Cir.1976) (extending *Trafficante* to Title VII and granting white female standing to sue to enjoin racial discrimination against co-

A closer analog to this case is *Gray v. Greyhound Lines, East,* 545 F.2d 169 (D.C.Cir.1976), in which the District of Columbia Circuit addressed prudential standing, albeit in dictum. After determining that the scope of standing under Title VII is coterminous with standing under Article III, the court held that African–American employees had standing to sue for racial discrimination in hiring practices that did not affect them as job applicants but that allegedly impacted their treatment at work and caused them psychological injury. *See id.* at 175–76. The court went on to say that even if Title VII claims were limited by prudential concerns, the court would reach the same result: "Insofar as plaintiffs complain that [defendant's] hiring practices have resulted in their own subjection to discriminatory treatment in the workplace, they are asserting interests clearly within the scope of Title VII's protection against discrimination in the 'terms, conditions, or privileges of employment.'" *Id.* at 176 (quoting 42 U.S.C. § 2000e–2). As *Gray* demonstrates, prudential standing, even if applicable to Title VII claims, would not necessarily limit Leibovitz's assertion of the particular claim she presented to the jury.[6]

It is beyond question that evidence of a hostile or abusive work environment will support a claim under Title VII for resulting injury. *See Meritor,* 477 U.S. at 66, 106 S.Ct. 2399 ("[A] plaintiff may establish a violation of Title VII by proving that discrimination based on sex has created a hostile or abusive work environment."). Defendants argue, however, that Leibo-

vitz's claim—that *other* women in her workplace were subjected to a hostile environment—predicates injury on the violation of rights not her own, and should therefore be precluded as a matter of prudential standing (which they argue applies to Title VII). We do not agree with this characterization of Leibovitz's claim.

The district court reached the issue of standing, and concluded that standing under Title VII is as broad as standing under Article III, a ruling we do not endorse. In so doing, the court framed the question of liability in this case in terms of whether "evidence of sexual harassment of other women in [plaintiff's workplace] that caused her emotional distress ... was sufficient to create an actionable claim for hostile work environment...." *Leibovitz,* 4 F.Supp.2d at 146. Summarizing the jury charge, the court stated: "The charge addressed plaintiff's allegations that *her* place of employment was so permeated with sexual discrimination that it interfered with her *personal right* to a gender-bias-free environment." *Id.* at 147 (emphasis added). The district judge thus understood the claim as one based upon Leibovitz's own work environment, and charged the jury on that basis, *without objection.* The verdict in favor of Leibovitz reflects the jury's conclusion that Leibovitz was injured because "her workplace was so permeated with discriminatory sexual behavior that was so severe or pervasive that it altered the conditions of her employment and created an abusive working environment for her."

---

workers). Leibovitz is not making an argument based on loss of associational benefits, nor do we express any opinion about whether *Trafficante's* reasoning applies to sex discrimination claims under Title VII.

6. Leibovitz introduced evidence of her own emotional trauma, induced by reaction to

hearsay about the hostile work environment allegedly created by discriminatory conduct in other parts of the Shop. As we hold later in this opinion, that is insufficient to support a claim under Title VII, but it does plead injury to herself (cognizable or not) rather than to another.

The jury did not find, nor does Leibovitz argue on appeal, that her psychological injury stems solely from a hostile work environment suffered by other women in another place. Her alleged injury is not vicarious. Leibovitz attributes her injury to her own work environment, which *she* experienced as hostile by reason of the alleged harassment of other women out of her presence. We therefore think that prudential standing concerns of the kind cited by defendant are not present in this case. In any event, whether or not prudential concerns limit Title VII standing, we think that the better part of prudence is to avoid announcing a rule that forecloses as a matter of standing claims that allege actual injury to the plaintiff caused (as the jury found) by hostility in the workplace directed against members of the protected class to which the plaintiff belongs.

Whether a plaintiff can maintain that her own work environment was hostile when the alleged harassing behavior was directed at the plaintiff's co-workers, out of the plaintiff's presence, and without the plaintiff's contemporaneous knowledge, is a distinct question that bears on whether Leibovitz's claim is cognizable.

## II. Hostile Work Environment

■ Two forms of sexual harassment are recognized under Title VII: direct discrimination (the so-called "quid pro quo" variety), which is not at issue in this case; and "hostile workplace environment" harassment, which is. *See Carrero v. New York City Housing Auth.*, 890 F.2d 569, 577 (2d Cir.1989). "For [hostile workplace] harassment to be actionable, it must be sufficiently severe or pervasive to alter the conditions of [the victim's] employment and create an abusive working environment." *Meritor*, 477 U.S. at 67, 106 S.Ct. 2399 (internal quotation marks and citation

omitted) (alteration in original); *accord Carrero*, 890 F.2d at 577.

■ The sufficiency of a hostile work environment claim is subject to both subjective and objective measurement: the plaintiff must demonstrate that she personally considered the environment hostile, and that the environment rose to some objective level of hostility. *See Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993) ("Conduct that is not severe or pervasive enough to create an objectively hostile or abusive work environment—an environment that a reasonable person would find hostile or abusive—is beyond Title VII's purview."); *see also Richardson v. New York State Dep't of Correctional Serv.*, 180 F.3d 426, 436 (2d Cir.1999) (focusing objective evaluation on "whether a reasonable person *who is the target of discrimination* would find the working conditions" sufficiently severe or pervasive (emphasis added)).

■ Courts look at all circumstances to ascertain whether an environment is sufficiently hostile or abusive to support a claim. *See Harris*, 510 U.S. at 23, 114 S.Ct. 367; *Cruz v. Coach Stores, Inc.*, 202 F.3d 560, 570 (2d Cir.2000) ("Determining whether workplace harassment was severe or pervasive enough to be actionable depends on the totality of the circumstances."). The factors that courts may consider include:

the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance. The effect on the employee's psychological well-being is, of course, relevant to determining whether the plaintiff actually found the environment abusive. But while psychological harm, like any other relevant fac-

tor, may be taken into account, no single factor is required.

*Harris,* 510 U.S. at 23, 114 S.Ct. 367. While psychological trauma is a consideration, a plaintiff is not required to demonstrate a tangible psychological injury; at the same time, "conduct that is merely offensive" will not rise to the level of a hostile work environment. *Harris,* 510 U.S. at 21, 114 S.Ct. 367. There is also no sexual harassment without a showing of adverse effect on the "terms and conditions" of employment. *Faragher v. City of Boca Raton,* 524 U.S. 775, 788, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998); *see Oncale v. Sundowner Offshore Servs., Inc.,* 523 U.S. 75, 81, 118 S.Ct. 998, 140 L.Ed.2d 201 (1998). Finally, the discrimination must be *because of* sex. *See Oncale,* 523 U.S. at 80, 118 S.Ct. 998 (noting critical issue is whether one sex is disadvantaged in the terms and conditions of employment while the other is not).

 As the district court noted, "[i]t was conceded that much of the alleged harassment did not occur in plaintiff's immediate vicinity and much of what she knew about the situation was second- or third-hand." *Leibovitz,* 4 F.Supp.2d at 146. In fact, Leibovitz witnessed none of the harassment that forms the predicate of the claim on which she recovered. Leibovitz alleged and adduced evidence that she personally experienced harassment, but the jury rejected those claims and that evidence. Even assuming that Leibovitz could claim to share the same "environment"—broadly conceived—as the women allegedly harassed, Leibovitz failed to demonstrate that their harassment adversely affected the terms and conditions of her own employment.

But, in any event, no such broad conception of the working environment is sustainable in this case. The women who were allegedly harassed were working in another part of the employer's premises, out of Leibovitz's sight and regular orbit; they were doing another job, and were allegedly subjected to harassment by a supervisor who supervised them but did not supervise Leibovitz; the experiences of those women came to Leibovitz's notice via hearsay (and were not proved).[7] In these circumstances, plaintiff cannot demonstrate that she suffered harassment either in subjective or objective terms. In terms of the objective impact of the harassment alleged, that harassment might as well have been going on in a nearby office of another firm, or been the subject of an infuriating newspaper article, or been a false rumor of a kind that would be upsetting if true.

Leibovitz also undertook to show that her employer's investigation of the charges or its remedial efforts were insufficient. However, these matters did not affect Leibovitz's own working environment, or the terms and conditions of her own employment, except to the (insufficient) extent that she had a sense of corporate or institutional identity. In any event, considering that the harassment itself was the subject of hearsay testimony never offered for its truth, the jury should not have been asked to evaluate the sufficiency of the employer's investigations or remedial measures.

The only way to characterize Leibovitz's environment as hostile or abusive is by expanding the concept of environment to include venues in which she did not work. Such a characterization would open the door to limitless employer liability, and

---

7. Although Leibovitz was permitted to testify as to what she was told concerning the alleged harassment of other women at the Shop, Judge Weinstein admitted her testimony, not for its truth, but only as evidence of Leibovitz's state of mind when she learned certain information that supported her retaliation claim—a claim rejected by the jury.

allow a recovery by any employee made distraught by office gossip, rumor or innuendo.

In short, Leibovitz presented no evidence that her own working environment was hostile, and failed to allege or prove that harassment of other women adversely affected the terms and conditions of her own employment. We hold that Leibovitz—who was not herself a target of the alleged harassment, was not present when the harassment supposedly occurred, and did not even know of the harassment while it was ongoing—failed to prove that an environment existed at work that was hostile to her because of her sex.

 In so holding, we recognize that evidence of harassment directed at other co-workers can be relevant to an employee's own claim of hostile work environment discrimination. "Because the crucial inquiry focuses on the nature of the workplace environment *as a whole,* a plaintiff who herself experiences discriminatory harassment need not be the target of other instances of hostility in order for those incidents to support her claim." *Cruz,* 202 F.3d at 570 (emphasis added); *accord Whidbee v. Garzarelli Food Specialties, Inc.,* 223 F.3d 62, 70 n. 9 (2d Cir.2000) (citing *Cruz* for proposition that environment as a whole is relevant to individual plaintiff's hostile work environment claim); *Perry v. Ethan Allen, Inc.,* 115 F.3d 143, 151 (2d Cir.1997) (concluding evidence of harassment directed at women other than plaintiff is relevant to hostile environment analysis); *cf. McPhaul v. Board of*

*Comm'rs,* 226 F.3d 558, 567 (7th Cir.2000) (harassing conduct directed at someone other than plaintiff, while relevant, does not have the same impact); *Gleason v. Mesirow Fin., Inc.,* 118 F.3d 1134, 1144 (7th Cir.1997) (same); *Schwapp v. Town of Avon,* 118 F.3d 106, 112 (2d Cir.1997) (noting incidents directed at others or outside plaintiff's presence "may be of limited probative value" at trial).

 Furthermore, remarks made outside a plaintiff's presence can be relevant to a hostile work environment claim. *See Schwapp,* 118 F.3d at 111 (holding comments made outside plaintiff's presence and learned second-hand may also contribute to a hostile work environment); *Torres v. Pisano,* 116 F.3d 625, 633 (2d Cir.1997) ("The fact that many of [the defendant's] statements were not made in [plaintiff's] presence is, in this case, of no matter; an employee who knows that her boss is saying things of this sort behind her back may reasonably find her working environment hostile.").[8]

We do not consider whether, as the District of Columbia Circuit has suggested in dicta, "a woman who was never herself the object of harassment might have a Title VII claim if she were forced to work in an atmosphere in which such harassment was pervasive." *Vinson v. Taylor,* 753 F.2d 141, 146 (D.C.Cir.1985), *aff'd sub nom., Meritor Sav. Bank v. Vinson,* 477 U.S. 57, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986).

## CONCLUSION

For the foregoing reasons, the decision of the district court denying defendant-

---

**8.** In support of its argument that Leibovitz has failed to adduce sufficient evidence of a hostile work environment, the defendant contends that all of the evidence at trial as to other women being harassed was inadmissible hearsay. While we note that this Court has held that a plaintiff's testimony that her co-workers told her of incidents of harassment by her employer outside her presence is

likely inadmissible hearsay, *see Whidbee,* 223 F.3d at 71–72; *Howley v. Town of Stratford,* 217 F.3d 141, 155 (2d Cir.2000), we conclude that even if Leibovitz's testimony as to what Jones told her was admitted (erroneously) for the purpose of proving that Woodley actually harassed the other women, Leibovitz has failed to make out an actionable claim for hostile work environment discrimination.

appellant's motions for judgment as a matter of law, new trial or remittitur and entering judgment on behalf of plaintiff-appellee Diane Leibovitz in the amount of $60,000 is reversed. The award of attorneys' fees in the amount of $142,769.10 is likewise vacated. Because we conclude that judgment should be entered in favor of defendant-appellant Transit Authority, we do not address the Transit Authority's other claims of error.