Deborah HORVATH, Plaintiff,

v.

**AMERICAN TISSUE CORPORATION and Joseph Farrugio, Defendants.**

**No. 01 CV 8005(ADS)(MLO).**

United States District Court,
E.D. New York.

July 17, 2002.

Cooper, Sapir & Cohen, P.C., Melville, NY, for Plaintiff David M. Cohen, Esq., of Counsel.

Joseph Farrugio, Medford, NY, Defendant Pro Se.

## MEMORANDUM OF DECISION AND ORDER

SPATT, District Judge.

This lawsuit arises out of claims by Debra Horvath ("Horvath" or the "plaintiff") that her employer, American Tissue Corporation ("ATC"), and her supervisor, Joseph Farrugio ("Farrugio") (collectively, the "defendants") discriminated against her on the basis of gender in relation to the terms, conditions and privileges of her employment. The plaintiff also claims that the defendants retaliated against her for complaining about alleged sexual harassment. All claims are brought under Title VII of the Civil Rights Act of 1964, ("Title VII"), 42 U.S.C. §§ 2000e, *et seq.*, and the New York State Human Rights Law ("NYHRL"), New York Executive Law §§ 290, *et seq.*, Presently before the Court is a motion to dismiss the complaint against Farrugio pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure ("Fed. R. Civ.P.").

### I. BACKGROUND

Horvath began her employment with ATC in 1995. In the five years that followed, Horvath received at least one promotion and one salary increase. In February 2000, Horvath began reporting to Farrugio, whom ATC had hired as its Corporate Credit Manager. At their first meeting, Farrugio asked Horvath whether she knew about a sexual harassment complaint that had been made at Farrugio's prior workplace; the whereabouts of a possible witness to those allegations; or whether other ATC employees were aware of allegations of sexual harassment. Horvath said that she did not have any information for Farrugio.

In the weeks following this initial meeting, Farrugio constantly stared at Horvath's breasts, asked her to go for walks, commented about her looks, and when Horvath asked him for help with work-related matters, he responded, "What is it worth to you?".

Several weeks later Horvath approached ATC's Corporate Human Resources Manager, Lorraine Weber ("Weber"), to address the problem of her mistreatment by Farrugio. Horvath did not feel Weber supported her, and therefore, Horvath did not file a formal written complaint. At the time of the events giving rise to this lawsuit, ATC did not require those claiming to be victims of sexual harassment to file a formal written complaint. Horvath's oral complaint did not prevent further mistreatment by Farrugio. In addition, Farrugio began attributing problems to Horvath that were not her fault.

In or about March 2000, Kurt Goldschmidt ("Goldschmidt") a semi-retired Senior Vice President of ATC approached Horvath and inquired whether anything was wrong because she no longer seemed herself. Horvath told Goldschmidt about the problems she had encountered with Farrugio, and Goldschmidt advised her to file a formal written complaint. Out of fear of reprisal, Horvath did not file a complaint.

On or about May 11, 2000, Horvath told Ed Stein ("Stein"), ATC's Chief Financial Officer, about the problems she was having with Farrugio. Horvath asked Stein to speak to Farrugio, but Stein advised her to file a formal written complaint instead.

Farrugio continued mistreating Horvath. On one occasion he took her hand and kissed it. The following day, May 12, 2000, Horvath was asked to attend a meeting where she was "accused of holding Canadian invoices rather then sending them out". (complaint ¶ 23). Horvath claimed that she had reviewed the matter with Farrugio, who also attended the meeting. Farrugio denied this contention. On May 15, 2000, Horvath approached

Weber and asked to file a formal written complaint. Weber did not give Horvath the opportunity to draft the complaint herself. Instead, Weber took notes as Horvath spoke, drafted a complaint, and handed it to Horvath with instructions to edit it and return it to her. Before Horvath had an opportunity to edit and return the completed version, she was terminated.

On or about July 18, 2000, Horvath filed a complaint of discrimination with the New York State Division of Human Rights alleging that Farrugio had sexually harassed her and, thus, created a hostile work environment. Horvath also allegedly claimed that ATC knew about Farrugio's conduct and failed to correct the matter. Horvath further claimed that ATC terminated her in retaliation for her complaints that Farrugio had sexually harassed her. By filing her complaint with the State Division of Human Rights, Horvath was also deemed to have filed a complaint with the Equal Employment Opportunity Commission ("EEOC"). On September 7, 2000, Horvath received a right to sue letter from the EEOC and on October 7, 2000 the State Division of Human Rights dismissed her complaint for administrative convenience.

The present complaint raises five causes of action. The first cause of action is a Title VII gender discrimination claim against ATC. Horvath claims that ATC failed to protect her from a hostile work environment. The second cause of action is a Title VII retaliation claim against ATC. The third and fourth causes of action parallel the first cause of action but are brought against ATC pursuant to the NYHRL rather than Title VII. The fifth cause of action is a NYHRL gender discrimination claim against Farrugio based on his alleged creation of a hostile work environment.

Presently before the Court is a motion by Farrugio to dismiss the first, second and fifth causes of action on the ground that they fail to state a claim against him. Farrugio asserts that the first and second causes of action must be dismissed as against him because Title VII does not permit individual liability. Farrugio bases his argument for dismissal of the fifth cause of action on the assertion that the plaintiff fails to allege that Farrugio had an ownership interest in ATC or the power to do more than carry out personnel decisions made by others.

In her opposition papers, Horvath points out that she did not list Farrugio as a defendant to the first or second causes of action because Title VII does not provide for individual liability. However, Horvath asserts that NYHRL gender discrimination claim withstands Farrugio's Rule 12(b)(6) challenge because the under NYHRL § 296(6), a complaint is sufficient to impose individual liability if it alleges that the defendant individually created a hostile work environment.

## II. DISCUSSION

At the outset, in light of the fact that Horvath concedes that the first and second causes of action, for Title VII violations, are not asserted against Farrugio, the Court will not address Farrugio's motion to dismiss those causes of action. Instead, this decision is limited to a discussion of the fifth cause of action, which alleges that Farrugio discriminated against Horvath based on her sex by creating or failing to prevent the creation of a hostile work environment in violation of the NYHRL.

On a motion to dismiss for failure to state a claim, the Court should dismiss the complaint pursuant to Rule 12(b)(6) if it appears beyond doubt that the plaintiff can prove no set of facts in support of his complaint which would entitle him to relief. See King v. Simpson, 189 F.3d 284, 286 (2d Cir.1999); Bernheim v. Litt, 79 F.3d

318, 321 (2d Cir.1996). As noted above, the Court must confine its consideration "to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." *Leonard F. v. Israel Discount Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir.1999); *Hayden v. County of Nassau*, 180 F.3d 42, 54 (2d Cir.1999). The Court must accept all factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *See Koppel v. 4987 Corp.*, 167 F.3d 125, 127 (2d Cir.1999); *Jaghory v. New York State Dep't of Educ.*, 131 F.3d 326, 329 (2d Cir.1997). The issue to consider is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims. *See Villager Pond, Inc. v. Town of Darien*, 56 F.3d 375, 378 (2d Cir.1995). Indeed, it is not the Court's function to weigh the evidence that might be presented at trial; instead, the Court must merely determine whether the complaint itself is legally sufficient. *See Villager Pond*, at 378.

In deciding Farrugio's motion to dismiss the complaint, the Court is mindful that Farrugio's *pro se* status means that his submissions should be held " 'to less stringent standards than formal pleadings drafted by lawyers.' " *Hughes v. Rowe*, 449 U.S. 5, 9, 101 S.Ct. 173, 176, 66 L.Ed.2d 163 (1980) (quoting *Haines v. Kerner*, 404 U.S. 519, 520, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972)); *Fleming v. United States*, 146 F.3d 88, 90 (2d Cir.1998) (citations omitted). The Court recognizes that it must make reasonable allowances so that a *pro se* plaintiff does not forfeit rights by virtue of his lack of legal training. *See Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir.1983). Indeed, courts should "read the pleadings of a *pro se* plaintiff liberally and interpret them 'to raise the strongest arguments that they suggest.' " *McPher-*

*son v. Coombe*, 174 F.3d 276, 280 (2d Cir. 1999) (quoting *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir.1994)). Nevertheless, the Court is also aware that *pro se* status " 'does not exempt a party from compliance with relevant rules of procedural and substantive law.' " *Traguth*, 710 F.2d at 95 (quoting *Birl v. Estelle*, 660 F.2d 592, 593 (5th Cir.1981)).

The NYHRL provides, in relevant part, that "[i]t shall be an unlawful discriminatory practice ... for an employer ... because of the age, race, creed, color national origin, sex, disability, genetic predisposition or carrier status, or marital status of an individual ... to discriminate against such individual in compensation or in terms, conditions or privileges of employment." N.Y.Exec.Law § 296. The NYHRL and Title VII "address the same type of discrimination, afford victims similar forms of redress, are textually similar and ultimately employ the same standards of recovery." *In re Aurecchione v. New York State Div. of Human Rights*, 98 N.Y.2d 21, ——, 744 N.Y.S.2d 349, 771 N.E.2d 231, 2002 WL 724767 *2 (Apr. 25, 2002); *Ferrante v. American Lung Assn.*, 90 N.Y.2d 623, 629, 665 N.Y.S.2d 25, 687 N.E.2d 1308 (1997); *see also Tomka v. Seiler Corp.*, 66 F.3d 1295, 1304 n. 4 (2d Cir.1995); *Kodengada v. IBM Corp.*, 88 F.Supp.2d 236, 242 (S.D.N.Y.2000). Accordingly, the Court relies on federal, as well as state, cases to resolve the present motion.

"Hostile work environment sexual harassment occurs when an employer's conduct 'has the purpose or effect of unreasonably interfering with an individual's work performance or creating an intimidating, hostile, or offensive working environment." *Tomka*, 66 F.3d at 1305 (quoting *Meritor Savings Bank v. Vinson*, 477 U.S. 57, 65, 106 S.Ct. 2399, 2404, 91 L.Ed.2d 49 (1986)). A hostile work envi-

ronment exists when the workplace is "permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993); *see Leibovitz v. New York City Transit Authority*, 252 F.3d 179, 188 (2d Cir.2001). To prevail on a hostile work environment sexual harassment claim, the plaintiff must demonstrate: (1) that she personally considered the environment to be hostile; and (2) that the environment rose to some objective level of hostility. *Leibovitz*, 252 F.3d at 188. To satisfy the objective component of the claim, the plaintiff must allege conduct that is offensive or pervasive enough to create an environment that a reasonable person would find hostile or abusive. *See Richardson v. New York State Dep't of Correctional Serv.*, 180 F.3d 426, 436 (2d Cir.1999).

When determining whether a complaint alleges a hostile work environment, a court considers the totality of the circumstances. *See Harris*, 510 U.S. at 23, 114 S.Ct. at 367; *Leibovitz*, 252 F.3d at 188; *Tomka*, 66 F.3d at 1305. The circumstances often include the frequency and severity of the discriminatory conduct; whether the conduct is physically threatening or humiliating; whether it unreasonably interferes with an employee's work performance; and the effect the conduct had on the employee's well being. *See Harris*, 510 U.S. at 23, 114 S.Ct. at 367; *Leibovitz*, 252 F.3d at 188; *Williams v. County of Westchester*, 171 F.3d 98, 100 (2d Cir.1999); *Kodengada v. IBM, Corp.*, 88 F.Supp.2d 236, 242 (S.D.N.Y.2000).

The New York Court of Appeals has held that "[a] corporate employee, though he has a title as an officer and is the manager or supervisor of a corporate division, is not individually subject to suit with respect to discrimination under New York's Human Rights Law if he is not shown to have any power to do more than carry out personnel decisions made by others." *Patrowich v. Chemical Bank*, 63 N.Y.2d 541, 542, 483 N.Y.S.2d 659, 473 N.E.2d 11 (1984). Here, Horvath does not allege that Farrugio had an ownership interest in ATC. Moreover, nothing in the complaint indicates that Farrugio had the authority to hire or fire Horvath. Although the complaint states that Farrugio was Horvath's supervisor and that she consulted him on work-related matters, this position alone does not subject Farrugio to individual liability. *See Patrowich*, 63 N.Y.2d at 542, 483 N.Y.S.2d 659, 473 N.E.2d 11; *see Tomka*, 66 F.3d at 1317; *Ahmed v. Compass Group*, 2000 WL 1072299 *5 (S.D.N.Y. Aug.3, 2000).

However, Section 296(6) of the NYHRL states that it is an unlawful discriminatory practice "for any person to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under this article, or to attempt to do so." N.Y.Exec.Law § 296(6). The Second Circuit has held that this language imposes individual liability on "a defendant who actually participates in the conduct giving rise to a discrimination claim", *Tomka*, 66 F.3d at 1317, even though the employee is not alleged to have any power to do more than carry out personnel decisions made by others. *Id.; Chamblee v. Harris & Harris, Inc.*, 154 F.Supp.2d 670, 677 (S.D.N.Y. 2001); *McCoy v. City of New York*, 131 F.Supp.2d 363, 370–71 (E.D.N.Y.2001); *Ahmed*, 2000 WL 1072299.

Applying these standards to the facts of this case, the Court finds that the complaint states a claim of hostile work environment sexual harassment against Farrugio, because Horvath alleges that Farrugio actually created the hostile work environ-

ment. *See generally Tomka,* 66 F.3d at 1317; *McCoy,* 131 F.Supp.2d at 370–71. The complaint alleges continual discriminatory conduct over a three-month period. *See Harris,* 510 U.S. at 23, 114 S.Ct. at 367; *Leibovitz,* 252 F.3d at 188; *Williams,* 171 F.3d at 100. From February 2000, when Farrugio became Horvath's supervisor through May 2000, when Horvath was terminated, Farrugio constantly stared at Horvath's breasts, asked her to go for walks, and commented about her looks. When Horvath asked Farrugio for help with work-related matters, he responded by asking, "What's it worth to you?". On one occasion, Farrugio took Horvath's hand and kissed it, conduct that, when viewed in the plaintiff's favor, can be inferred as physically threatening or humiliating. *See Harris,* 510 U.S. at 23, 114 S.Ct. at 367; *Leibovitz,* 252 F.3d at 188; *Williams,* 171 F.3d at 100.

The complaint also alleges that Farrugio's conduct had a negative impact on Horvath's well-being. *See Leibovitz,* 252 F.3d at 188 (subjective component of hostile work environment claim). In response to Goldschmidt's observation that Horvath was not acting as she usually did, Horvath told him about Farrugio's treatment of her. It is reasonable to infer that Horvath personally considered her environment to be hostile because over a three-month period, she complained to three individuals at ATC about Farrugio's conduct. Moreover, at this stage of the litigation, drawing all reasonable inferences in Horvath's favor, *see Koppel,* 167 F.3d at 127, the Court finds that a reasonable person could find that Farrugio's conduct is pervasive such that it creates a hostile work environment. *See Richardson,* 180 F.3d at 436. It is clear from this discussion of the alleged hostile work environment that Farrugio actually participated in the conduct that gave rise to the complaint. *See Tomka,* 66 F.3d at 1317; *McCoy,* 131 F.Supp.2d at

370–71. The plaintiff has satisfied her de minimus burden of establishing a prima facie case of gender discrimination against Farrugio, whose motion to dismiss the NYHRL claim is denied.

### III. *CONCLUSION*

Based on the foregoing, it is hereby

**ORDERED,** that the motion by defendant Farrugio to dismiss the fifth cause of action, which is the only claim against him, is **DENIED;** and it is further

**ORDERED,** that the parties are directed to contact United States Magistrate Judge Michael L. Orenstein forthwith to set a schedule for discovery.

**SO ORDERED.**