**Rasean J. TATE, Plaintiff,**

v.

**ROCKETBALL, LTD. and Levy Restaurant Holdings, LLC., Defendants.**

No. 14–CV–2056.

United States District Court, E.D. New York.

Signed Sept. 18, 2014.

Marjorie Mesidor, Nicole Ann Welch, Phillips & Associates, PLLC, Attorneys at Law, New York, NY, for Plaintiff.

Cristina E. Rodriguez, Baker Botts L.L.P., Houston, TX, Joseph Charles Perry, Joyce Yin-en Young, Baker Botts L.L.P., New York, NY, for Defendants.

## MEMORANDUM AND ORDER

JACK B. WEINSTEIN, Senior District Judge.

### Table of Contents

I. Introduction .................................................................. 271

II. Facts ......................................................................... 271

III. Summary Judgment ........................................................ 272

IV. New York City Human Rights Law ...................................... 272
 A. Discrimination by Employer Against Employee .......................... 272
 B. Joint Employment ....................................................... 273

 C. Aiding and Abetting ...............................................273
 D. Implied Discriminatory Intent from Third Party Homophobia....:..........274

V. Application of Law to Facts ...........................................275
 A. Discrimination by Employer Against Employee .........................275
 B. Joint Employment ...............................................275
 C. Aiding and Abetting ............................................275
 D. Implied Discriminatory Intent from Third Party Homophobia..............276

VI. Conclusion ........................................................276

## I. Introduction

This case involves claims by a waiter, Rasean J. Tate, that caustic and cruel homophobic remarks directed at him by professional basketball players and staff caused him serious harm, including loss of income. He was employed by Levy Restaurant Holdings, LLC ("Restaurant") to deliver food and beverages to the locker room for the Houston Rockets' ("Rockets") players and staff when the team was at the Barclays Center in Brooklyn. Upon learning of the hostile remarks, Restaurant stopped sending Tate into the locker room.

Tate sues both Restaurant and Rocketball, Ltd. ("Rocketball"), which owns and operates the Houston Rockets, as employers discriminating against him in violation of the New York City Human Rights Law, N.Y. City Admin. Code at §§ 8–107(1)(a) *et seq.*, Am. Compl. ¶¶ 1, 102, 105, ECF No. 21.

Rocketball moves to dismiss. Its motion was converted to a motion for summary judgment.

Based on the present lack of evidence supporting an employer-employee relationship between the plaintiff and Rocketball, summary judgment is granted. For the reasons indicated below, the order is stayed for sixty days to allow plaintiff the opportunity for limited discovery.

As presently construed, the City's anti-discrimination statute does not cover acts by third party customers that cause an employer to discriminate against one of its employees. Restaurant, plaintiff's employer, does not seek to justify any discrimination charged to it on the ground that its acts limiting plaintiff's services were justifiable in response to invidious remarks and implied demands of its customer, Rocketball.

## II. Facts

Plaintiff, a gay male, alleges that he was hired by Restaurant as a "Private Event Catering Server" at Barclays Center, a Brooklyn indoor arena used for basketball games and other events. Am. Compl. ¶¶ 9, 18, 21–22. Restaurant assigned plaintiff to serve food and beverages to visiting teams using Barclays' locker rooms. *Id.* at ¶ 23.

In February 2013, plaintiff was directed by Restaurant to deliver refreshments to Rockets' players in a Barclays' locker room during a National Basketball Association game between the Brooklyn Nets and the Rockets. *Id.* ¶ 26. His duties included setting up a buffet. *Id.* ¶ 26–28. After plaintiff entered the locker room, a number of Rockets' players laughed. Taunting voices said: "Get this faggot out of here!" and "He's trying to catch a sneaky peaky!" These comments were repeated a number of times by the Rockets' players and staff. *Id.* ¶ 29.

A representative of the Brooklyn Nets witnessed the episode; he instructed plaintiff to "just leave," and he would "take care of it." *Id.* ¶ 30. Restaurant and Rocketball were promptly notified of the incident. *Id.* ¶¶ 30–36.

Plaintiff allegedly suffered adverse employment consequences. He was not sent to regular locations at Barclays Center, including dressing rooms, locker rooms, and not employed in any shift that accrued overtime. Heterosexual employees, some with less seniority, were given these assignments. *Id.* ¶¶ 37–41, 46, 50–61, 72–73, 77–78. Plaintiff claims that he was also improperly singled out for not following instructions and was inappropriately "written up" by his supervisors. *Id.* ¶¶ 67–83. As a result, he missed work at more than 20 events and now has been completely taken off the work schedule. *Id.* ¶ 89.

### III. Summary Judgment

Summary judgment is appropriate if "there is no genuine issue as to any material fact and if the moving party is entitled to judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *see, e.g., Mitchell v. Washingtonville Cent. Sch. Dist.*, 190 F.3d 1, 5 (2d Cir.1999). If, after construing the evidence in the light most favorable to the non-moving party and drawing all reasonable inferences in its favor, there is no genuine issue as to any material fact and the movant is entitled to a judgment as a matter of law, summary judgment is warranted. Fed.R.Civ.P. 56(a); *see Anderson*, 477 U.S. at 247–50, 255, 106 S.Ct. 2505.

Evidence offered to demonstrate a genuine dispute regarding a material fact must consist of more than "conclusory allegations, speculation or conjecture." *Cifarelli v. Vill. of Babylon*, 93 F.3d 47, 51 (2d Cir.1996); *see Del. & Hudson Ry. v. Consol. Rail Corp.*, 902 F.2d 174, 178 (2d Cir.1990) ("Conclusory allegations will not suffice to create a genuine issue."). "If the non-movant fails to come forth with evidence sufficient to permit a reasonable juror to return a verdict in his or her favor on an essential element of the claim, summary judgment is granted." *Guisto v. Stryker Corp.*, 293 F.R.D. 132 (E.D.N.Y. 2013) (internal quotations omitted) (*quoting Burke v. Jacoby*, 981 F.2d 1372, 1379 (2d Cir.1992)); *see, e.g., Anderson*, 477 U.S. at 248–49, 106 S.Ct. 2505.

### IV. New York City Human Rights Law

#### A. Discrimination by Employer Against Employee

New York City Administrative Code Section 8–107 ("NYCHRL") provides that it is unlawful to discriminate against an employee because of his or her sexual orientation. It makes it civilly actionable:

> [f]or an employer or an employee or agent thereof, because of the actual or perceived ... sexual orientation ... of any person, to refuse to hire or employ or to bar or to discharge from employment such person or to discriminate against such person in compensation or in terms, conditions or privileges of employment.

*Id.* at Section 107(1)(a).

 "Employer" is not defined in the NYCHRL. Courts borrow from interpretations under, *inter alia*, Title VII of the Civil Rights Act, 42 U.S.C. § 2000e *et seq. See, e.g. Weir v. Holland & Knight, LLP*, 34 Misc.3d 1207(A), 943 N.Y.S.2d 795, 2011 WL 6973240 (Sup.Ct.2011). To qualify as an "employer" under Title VII, courts do not "require a direct employer/employee relationship." *Lima v. Addeco*, 634 F.Supp.2d 394, 399 (S.D.N.Y.2009), *aff'd sub nom., Lima v. Adecco and/or Platform Learning, Inc.*, 375 Fed.Appx. 54 (2d Cir. 2010) (internal citations and quotations omitted). Control of the "conditions of ... employment" can indicate one's position as a "joint employer." *Adams v. Debevoise & Plimpton*, 03 CIV. 3015 (AKH), 2004 WL 1737826 (S.D.N.Y. Aug. 3, 2004).

Expansion by courts of the necessary employer-employee relationship by implication is restrained. *Cf. Leibovitz v. New York City Transit Auth.*, 252 F.3d 179, 188–89 (2d Cir.2001), (employee did not suffer hostile work environment based upon harassment of female co-workers when she herself was not a target, under 42 U.S.C. § 2000e *et seq.*), *rev'g, Leibovitz v. New York City Transit Auth.*, 4 F.Supp.2d 144 (E.D.N.Y.1998). Limited broadening of the employer-employee connection is recognized as indicated by (b) and (c) below:

## B. Joint Employment

Under the joint employment doctrine, "an employee, formally employed by one entity, who has been assigned to work in circumstances that justify the conclusion that the employee is at the same time constructively employed by another entity, may impose liability ... on the constructive employer, on the theory that this other entity is the employee's joint employer." *Arculeo v. On–Site Sales & Mktg., LLC*, 425 F.3d 193, 198 (2d Cir.2005) (Title VII) (internal citations omitted). Considered factors include the "commonality of hiring, firing, discipline, pay, insurance, records, and supervision." *Lima*, 634 F.Supp.2d at 400 (internal citations and quotations omitted).

## C. Aiding and Abetting

New York City Human Rights Law explicitly prohibits "any person to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under this article, or to attempt to do so." N.Y. City Admin. Code at § 8–107(6). "Aiding and abetting liability requires that the aider and abettor share the intent or purpose of the principal actor, and there can be no partnership in an act where there is no community of purpose." *Brice v. Sec. Op-erations Sys., Inc.*, 00 CIV. 2438 (GEL), 2001 WL 185136, at \*4 (S.D.N.Y. Feb. 26, 2001) (internal quotations and citations omitted). "The same standards of analysis used to evaluate aiding and abetting claims" under the New York State Human Rights Law apply to "claims under the NYCHRL because the language of the two laws is virtually identical." *Feingold v. New York*, 366 F.3d 138, 158 (2d Cir.2004) (internal citations and quotations omitted).

Where the aiding and abetting and underlying claims are "inextricably interrelated," some courts have delayed ruling until the underlying claim is adjudicated. *See In re Bayou Hedge Fund Litig.*, 06–MDL–1755 (CM), 2007 WL 2363622, at \*4 (S.D.N.Y. Aug. 16, 2007) (internal citations and quotations omitted) (denying 54(b) motion for "inextricably interrelated" aiding and abetting claims in a non-discrimination context); *Daniels v. Wesley Gardens Corp.*, 10–CV–6336T, 2011 WL 1598962, at \*4 (W.D.N.Y. Apr. 27, 2011) (holding that dismissal of the aiding and abetting violations of New York State Human Rights Law is appropriate only where the principal cause of action was dismissed on the merits); *cf. Bank of China, N.Y. Branch v. NBM L.L.C.*, 01 CIV. 0815 (DC), 2004 WL 1907308 (S.D.N.Y. Aug. 26, 2004), *aff'd in part sub nom., Bank of China, N.Y. Branch v. Bank of China, Hong Kong Branch*, 243 Fed.Appx. 652 (2d Cir.2007) (denying 54(b) motion seeking certification of dismissed aiding and abetting fiduciary duty claim where claim was still pending regarding underlying breach).

If a "plaintiff fails to plead any facts suggesting that a defendant displayed any intent to discriminate or was in any way involved in the alleged discriminatory scheme[,]" summary judgment is appropriate against the non-employer. *Heskin v. Insite Adver., Inc.*, 03 CIV. 2508 GBD AJP, 2005 WL 407646 (S.D.N.Y. Feb.

22, 2005) (referring to New York State Human Rights Law and granting summary judgment as to third party liability under New York State and New York City Human Rights Law where there was no evidence of intent); *Brice*, 2001 WL 185136 (granting summary judgment where there is no evidence of defendant's purpose in aiding and abetting discrimination or retaliation); *see also Leykis v. NYP Holdings, Inc.*, 899 F.Supp. 986, 993 (E.D.N.Y.1995) (granting motion to dismiss New York State Human Rights Law claim where plaintiffs simply named "Murdoch as a defendant, identified him in the Complaint and then failed to allege any facts" that would give rise to liability.).

### D. Implied Discriminatory Intent from Third Party Homophobia

 An implied discriminatory intent of a third party does not create the equivalent of employer-employee relationship. A known general culture of homophobia does not—at least as the applicable statutory provision has been interpreted to date—translate to a violation of employment discrimination statutes. The power of a third party to prevent slurs does not yet constitute a basis for liability when that power is not exercised.

"Proximate cause" cannot at the present time be established in cases such as the present one—though the definition of "proximate cause" is a matter of public policy that changes to meet the needs of the law and morality in a changed society. *See, e.g. Gill v. Arab Bank, PLC*, 893 F.Supp.2d 542, 556 (E.D.N.Y.2012) (citing authority).

A claimed *general culture* of homophobia in professional basketball cannot alone, at the present time, support a *specific* claim against a professional basketball owner or the National Basketball Association. *Cf.* Timothy A. Galaz, *Bargaining for the Next Gay Player: How Can Jason Collins Help to Develop the National Basketball Association into a More Inclusive Workplace?*, 21 JEFFREY S. MOORAD SPORTS L.J. 461, 478 (2014); *see also Roy Hibbert **Fined**, Apologizes for Slur*, ESPN.com (June 3, 2013), http://espn.go.com/nba/playoffs/2013/story/_/id/9334504/2013-nba-playoffs-roy-hibbert-indiana-pacers-apologizes-postgame-gay-slur (emphasis added); Mitch Lawrence, *Amar'e Stoudemire **Fined** $50,000 by NBA For Using Gay Slur in Twitter Exchange with N.Y. Knicks Fan*, NEW YORK DAILY NEWS (June 26, 2012), http://www.nydailynews.com/sports/basketball/knicks/amar-stoudemire-fined-50-000-nba-gay-slur-twitter-exchange-ny-knicks-fan-article-1.1102702 (emphasis added); Jeff Zillgitt, *NBA Fines Bulls' Joakim Noah $50,000 for Anti–Gay Slur*, USA Today.com (May 24, 2011), http://usatoday30.usatoday.com/sports/basketball/nba/bulls/2011-05-23-noah-gay-slur_N.htm (emphasis added); Kelly Dwyer, *Kobe Bryant **Fined** by NBA for Shouting a Homophobic Slur*, Yahoo! Sports (April 13, 2011), http://sports.yahoo.com/nba/blog/ball_dont_lie/post/gay-rights-group-complains-as-kobe-is-caught-using-a-homophobic-slur?urn=nba,wp1277 (emphasis added); *but see* Brief for Chris Kluwe & Brendon Ayanbadejo as Amicus Curiae Supporting Respondents, *Hollingsworth v. Perry*, 133 S.Ct. 2652 (2013) (No. 12–144), 2013 WL 795547, at *2 (noting that the culture of homophobia "is finally changing, and changing drastically" and that the National Football Association, the National Hockey League, Major League Baseball, and the National Basketball Association, "at the league level, team level, and individual level, are finally speaking out against homophobia and intolerance . . . .").

 Courts "constru[e] the NYCHRL's provisions broadly in favor of

discrimination plaintiffs, to the extent that such a construction is reasonably possible." *Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.,* 715 F.3d 102, 109 (2d Cir.2013). But, like its state and federal counterparts, the NYCHRL does *not* operate as a moral imperative or as a general civility code. *Fattoruso v. Hilton Grand Vacations Co., LLC,* 873 F.Supp.2d 569, 576 (S.D.N.Y. 2012), *aff'd,* 525 Fed.Appx. 26 (2d Cir. 2013); *Mihalik,* 715 F.3d at 108. "[P]rivate biases may be outside the reach of the law[.]" *Palmore v. Sidoti,* 466 U.S. 429, 433, 104 S.Ct. 1879, 80 L.Ed.2d 421 (1984). The law does not proscribe or censure *all* invidious third party conduct.

## V. Application of Law to Facts

### A. Discrimination by Employer Against Employee

█ Based on the joint employment doctrine, plaintiff claims that Rocketball is an "employer" under Section 8–107(1)(a). He fails to provide more than "conclusory allegations, speculation or conjecture." *Cifarelli,* 93 F.3d at 51.

There is no showing that Rocketball was his "joint employer" with Restaurant and exercised "control" or management over him. Am. Compl. ¶¶ 13–15. No evidence is provided that Defendant Rocketball caused the alleged employment discrimination. Plaintiff does not claim that the Rockets had the power to hire or fire any Restaurant employees, that the Rockets had any control over Restaurant employees' schedules or conditions of employment, or that the Rockets had any say in the rate and method of payment to Restaurant employees. The only specific allegation of control is a single request for salad dressing made of plaintiff by Rocketballs' players or staff. Pl.'s Mem. of Law in Opp. to Def.'s Mot. for Summ. Judg. ("Pl.'s Opp.") at 14, ECF No. 42. This is

no different than a customer requesting extra salad dressing in a restaurant.

While general civility dictates that customers treat servers with respect, customers and servers do not enjoy an employer-employee relationship under the statute. The NYCHL is not "a general civility code". *See Mihalik,* 715 F.3d at 108 (internal citations and quotations omitted); *see also* discussion in *Leibovitz* Court of Appeal and district court opinions, *supra* Part IV.A.

### B. Joint Employment

No evidence of joint employment has been presented.

### C. Aiding and Abetting

█ Based on the information supplied to date, plaintiff's claim of aiding and abetting fails. While plaintiff alleges that Rocketball "began the cycle of discrimination[,]" and that Rocketball "incited [d]efendant [Restaurant's] retaliatory actions", Pl.'s Opp. at 20, there is no evidence of a "community of purpose" between Rocketball and Restaurant. *Brice,* 2001 WL 185136 at \*4.

Plaintiff alleges only that Rockets' players and staff made discriminatory comments, after which Restaurant denied plaintiff the opportunity to work with the Brooklyn Nets or at other events. He does not plead nor proffer any evidence that subsequent discriminatory events involved the Rockets. Am. Compl. ¶¶ 37–89; Pl.'s Opp. at 13–17. He offers no explanation as to why the Rockets, who according to defendants, visit New York only a handful of times a year and have no ongoing relationship with Barclays Center, would have an interest in keeping an employee of a food and beverage supplier out of a visiting locker room when the Rockets were not physically in the state. Mem. of Law in Supp. Of Def. Rocketball Ltd.'s 12(b)(6) Mot. to Dismiss at 9, ECF. No. 25.

To date, there is no evidence that Rocketball aided and abetted Restaurant's conduct.

## D. Implied Discriminatory Intent from Third Party Homophobia

 Even if homophobia were endemic among players for the National Basketball Association, there is no evidence that Rocketball, as a member of the Association, proximately caused damage to plaintiff in the way it dealt with the issue in disciplining or failing to discipline its employees.

## VI. Conclusion

Based on the present pleadings, Rocketball's motion for summary judgment is granted. Discovery is ongoing. The relationship among the Rocketball and its employees and Restaurant and its employees has not been properly explored.

The order of dismissal is stayed for sixty days to permit the magistrate judge to supervise discovery with respect to relationship among Rocketball and its employees and Restaurant and its employees.

SO ORDERED.